IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re: | ) | Case No. 23-87-ELG |
| | ) | (Chapter 7) |
| RITA BROWNER | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |
| | ) | |
| LATONYA GRIFFIN, | ) | |
| | ) | Adv. Case No. 23-10015-ELG |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| RITA BROWNER, | ) | |
| | ) | |
| Defendant. | ) | |

## MOTION FOR JUDGMENT ON THE PLEADINGS

Maurice B. VerStandig, Esq.
Bar No. MD18071
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854
Phone: (301) 444-4600
Facsimile: (301) 444-4600
mac@mbvesq.com
*Counsel for Rita Browner*

# TABLE OF CONTENTS

I.      Introduction ................................................................................................................. 1

II.     Standard ...................................................................................................................... 2

III.    The Plaintiff's Allegations ......................................................................................... 4

IV.     Argument: Judgment on the Pleadings is Appropriate ............................................... 5

        a.   The Plaintiff's Claim Under Section 523(a)(2)(A) Does Not Establish Fraud ........... 5

        b.   Count II of the Complaint Does Not Present a Viable Claim .................................... 7

             i.     The Tort of Conversion is Inapplicable to Monetary Claims ............................... 8

             ii.    The Economic Loss Rule Prohibits Recovery for Conversion ........................... 10

             iii.   The Plaintiff Does Not Allege Willful and Malicious Injury ............................ 11

        c.   The Plaintiff's Claims Run Afoul of the Statute of Frauds ..................................... 14

V.      Argument: The Plaintiff Has Unclean Hands ................................................................ 17

VI.     Conclusion ................................................................................................................. 19

## TABLE OF AUTHORITIES

**Cases**

*Aguilar v. RP MRP Washington Harbour, LLC*,
98 A.3d 979 (D.C. 2014) .......................................................................... 10

*Allied Investment Corp. v. Jasen*,
731 A.2d 957 (Md. 1999) ............................................................................ 9

*Anderson v. USAA Cas. Ins. Co.*,
221 F.R.D. 250 (D.D.C. 2004).................................................................. 4, 5

*Apollo Group, Inc. v. Avnet, Inc.*,
58 F.3d 477 (9th Cir. 1995) ...................................................................... 10

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)................................................................................. 2, 5

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).............................................................................. 2, 3, 5

*Browning v. Clinton*,
292 F.3d 235 (D.C. Cir. 2002) .................................................................... 3

*Bullock v. BankChampaign, N.A.*,
569 U.S. 267 (2013).................................................................................. 18

*Campbell v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*,
130 F. Supp. 3d 236 (D.D.C. 2015) ........................................................... 10

*Cannon v. Wells Fargo Bank, N.A.*,
926 F.Supp.2d 152 (D.D.C. 2013) ............................................................. 10

*Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Justice*,
436 F. Supp. 3d 354 (D. D.C. 2020) ......................................................... 2, 3

*Conley v. Gibson*,
355 U.S. 41 (1957)...................................................................................... 3

*Curaflex Health Servs., Inc. v. Bruni*,
877 F.Supp. 30 (D.D.C. 1995) ................................................................... 10

*Daly v. Castro Llanes*,
30 F. Supp. 2d 407 (S.D.N.Y. 1998)............................................................ 8

*Darcars Motors of Silver Spring, Inc. v. Borzym*,
841 A.2d 828 (Md. 2004) ................................................................................. 9, 10

*Desmond v. Taxi Affiliation Services LLC*,
344 F. Supp. 3d 915 (N.D. Ill. 2018) .......................................................................... 8

*DiLeo v. Ernst & Young*,
901 F.2d 624 (7th Cir. 1990) ................................................................................... 4

*Dist. of Columbia Nurses Ass'n v. Brown*,
160 F. Supp. 3d 13 (D.D.C. 2016) .............................................................................. 2

*Ellenburg v. Brockway, Inc.*,
763 F.2d 1091 (9th Cir. 1985) ................................................................................ 18

*Ethanol Partners Accredited v. Wiener, Zuckerbrot, Weiss & Brecher*,
635 F.Supp. 18 (E.D. Pa. 1985) ................................................................................ 8

*Horrigan v. Wald (In re Wald)*,
2012 WL 2564367 (Bankr. W.D. Tex. July 2, 2012) ..................................................... 8

*In re Aikin*,
2007 WL 3305364 (Bankr. D.D.C. 2007) ................................................................... 3

*In re Balzano*,
127 B.R. 524 (Bankr. E.D.N.Y. 1991) ....................................................................... 6

*In re Bauder*,
333 B.R. 828 (B.A.P. 8th Cir. 2005) ........................................................................ 12

*In re B-E Holdings, Inc.*,
228 B.R. 414 (E.D. Wis. 1992) ............................................................................... 19

*In re Billon*,
2021 WL 2908970 (Bankr. N.D. Ill. July 12, 2021) ..................................................... 8

*In re Casali*,
517 B.R. 835 (Bankr. N.D. Ill. 2014) ....................................................................... 3

*In re Exxon Valdez*,
1994 WL 182856 (D. Alaska 1994) ......................................................................... 11

*In re Glass*,
207 B.R. 850 (Bankr. E.D. Mich. 1997) ................................................................... 13

iv

*In re Harrison*,
301 B.R. 849 (Bankr. N.D. Ohio 2003) ................................................................. 6

*In re Holland*,
2013 WL 2190164 (Bankr. D.D.C. May 21, 2013) ............................................. 12

*In re Kemmerer*,
156 B.R. 806 (Bankr. S.D. Ind. 1993) ................................................................. 13

*In re Khaligh*,
338 B.R. 817 (B.A.P. 9th Cir. 2006) ................................................................... 12

*In re Lane*,
937 F.2d 694 (1st Cir. 1991) ................................................................................. 3

*In re Munson*,
2010 WL 3768017 (Bankr. N.D. Ill. 2010) ........................................................... 3

*In re Nabong*,
614 B.R. 67 (Bankr. D. Alaska 2019) .................................................................... 6

*In re Osborne*,
520 B.R. 861 (Bankr. D.N.M. 2014) ..................................................................... 6

*In re Sklar*,
626 B.R. 750 (Bankr. S.D.N.Y. 2021) ................................................................. 18

*In re Swanson*,
398 B.R. 328 (Bankr. N.D. Iowa 2008) ................................................................ 7

*In re: HP Bennett, LLC*,
2023 WL 8881858 (Bankr. D.D.C. Dec. 22, 2023) ............................................ 18

*Jacobs v. Ballard (In re Ballard)*,
26 B.R. 981 (Bankr. D. Conn. 1983) ..................................................................... 6

*Johnson v. Yellow Cab Transit Co.*,
321 U.S. 383 (1944) ............................................................................................. 18

*Kawaauhau v. Geiger*,
523 U.S. 57 (1998) ............................................................................................... 13

*Kowal v. MCI Commc'ns Corp.*,
16 F.3d 1271 (D.C. Cir. 1994) .......................................................................... 3, 4

*Lawson v. Commonwealth Land Title Ins. Co.*,
518 A.2d 174 (Md. App. 1986)..........................................................................9

*Lockerby v. Sierra*,
535 F.3d 1038 (9th Cir. 2008) .........................................................................14

*Matter of Coastal Group, Inc.*,
100 B.R. 177 (Bankr. D. Del. 1989) ................................................................19

*McNamara v. Picken*,
950 F.Supp.2d 193 (D.D.C. 2013) ...................................................................10

*Morris v. Osmose Wood Preserving*,
667 A.2d 624 (Md. 1995) ................................................................................11

*Narang v. Biswas (In re Biswas)*,
2009 WL 7809011 (9th Cir. BAP Sept. 2, 2009)..............................................6

*Northbay Wellness Group, Inc. v. Beyries*,
789 F.3d 956 (9th Cir. 2015) ...........................................................................18

*Overland Direct, Inc. v. Aframian*,
2023 WL 2401768 (C.D. Cal. Mar. 7, 2023) ...................................................18

*Pac. Indem. Co. v. Whaley*,
572 F. Supp. 2d 626 (D. Md. 2008) .................................................................11

*Republic of Rwanda v. Uwimana (In re Uwimana)*,
274 F.3d 806 (4th Cir.2001) ...........................................................................18

*Robins Dry Dock & Repair Co. v. Flint*,
275 U.S. 303 (1927)........................................................................................11

*Roman v. Sage Title Group, LLC*,
146 A.3d 479 (Md. App. 2016).....................................................................9, 10

*Schwalbe v. Gans (In re Gans)*,
75 B.R. 474 (Bankr. S.D.N.Y. 1987) ................................................................6

*Smith v. Meyers (In re Schwartz & Meyers)*,
130 B.R. 416 (Bankr.S.D.N.Y.1991) ................................................................6

*Stancil v. Bradley Invs., LLC (In re Stancil)*,
487 B.R. 331 (Bankr. D.D.C. 2013) ...............................................................18

*State of Cal. ex rel. Mueller v. Walgreen Corp.*,
175 F.R.D. 631 (N.D. Cal. 1997) ................................................................ 3

*Tillery v. Borden*,
2010 WL 3517015 (D. Md. Sept. 3, 2010) .................................................. 9

*United Providers, Inc. v. Pagan (In re Pagan)*,
564 B.R. 324 (Bankr. N.D. Ill. 2017) .................................................... 8, 14

*United States v. Manufacturers Hanover Tr. Co.*,
240 F. Supp. 867 (S.D.N.Y. 1965) ............................................................ 14

*Wish Acquisition, LLC v. Salvino (In re Salvino)*,
373 B.R. 578 (Bankr. N.D. Ill. 2007) ....................................................... 14

*Yah Kai World Wide Enterprises, Inc. v. Napper*,
195 F. Supp. 3d 287 (D.D.C. 2016) ............................................................ 9

*Yates v. Davis (In re Davis)*,
2013 WL 6796657 (Bankr. M.D. Ala. Dec. 23, 2013) ............................... 6

*Young v. United States*,
535 U.S. 43 (2002) ..................................................................................... 18

## Statutes

11 U.S.C. § 108 ......................................................................................... 17

11 U.S.C. § 362 ..................................................................................... 1, 17

11 U.S.C. § 523 ................................................................................. *passim*

D.C. Code § 12-301 ................................................................................... 16

D.C. Code § 28-3502 ................................................................................. 15

Md. Code, Cts. & Jud. Proc. § 5-101 ....................................................... 16

Md. Code, Cts. & Jud. Proc. § 5-901 ....................................................... 14

## Rules

Federal Rule of Civil Procedure 8 .............................................................. 3

Fedederal Rule of Civil Procedure 9 .................................................. *passim*

Federal Rule of Bankruptcy Procedure 7012 ................................................................................. 1

Maryland Rule 2-321 ................................................................................................................. 17

Comes now Rita Browner ("Ms. Browner," the "Defendant," or the "Debtor"), by and through undersigned counsel, pursuant to Federal Rule of Bankruptcy Procedure 7012 and Federal Rule of Civil Procedure 12, and moves this Honorable Court to enter judgment in her favor, and against Latonya Griffin ("Ms. Griffin" or the "Plaintiff") on Latonya Griffin's Complaint for A Determination Excepting Debt from Discharge (the "Complaint," as found at DE #1) and in support thereof states as follows:

## I.    Introduction

The Plaintiff alleges that Ms. Browner borrowed monies to be applied to a residential fix-and-flip project, promised to repay those funds with interest, and then failed to do so. Even if true, these contentions amount to little more than the breach of a contractual obligation—something that does not invite a denial of discharge in this Honorable Court and, to the contrary, that is of the variety of indebtedness so regularly and habitually discharged as to be at the heart of the bankruptcy process.

Worsening matters, the Complaint presents prima facie evidence of the Plaintiff willfully and wantonly violating the automatic stay set forth in Section 362 of Title 11 of the United States Code (the "Automatic Stay"). And, for good measure, the legal theory of indebtedness underlying the Complaint appears to be premised on a theory that contravenes the state of frauds and the economic loss doctrine.

At core, judgment on the pleadings is appropriate *sub judice* because (i) the Plaintiff has not made allegations that—even if true—would invite a finding of nondischargeability; (ii) the Plaintiff is prohibited from seeking such a finding on account of her textbook violation of the Automatic Stay; and (iii) the Plaintiff's theory of indebtedness, in addition to not inviting a

1

nondischargeable debt, does not appear to invite any monetary liability cognizable under governing law.

For these reasons, and as extrapolated upon *infra*, judgment is properly entered in favor of Ms. Browner.

## II.     Standard

As noted by the United States District Court for the District of Columbia, "[t]he appropriate standard for reviewing a motion for judgment on the pleadings is the same as that applied to a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted." *Dist. of Columbia Nurses Ass'n v. Brown*, 160 F. Supp. 3d 13, 14 (D.D.C. 2016) (quoting *Robinson–Reeder v. Am. Council on Educ.*, 532 F.Supp.2d 6 (D.D.C. 2008)).

Familiarly, "[t]o survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Justice*, 436 F. Supp. 3d 354, 357–58 (D.D.C. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))). "A claim is facially plausible when the pleaded factual content 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Citizens for Responsibility & Ethics in Washington*, 436 F. Supp. 3d at 357–58 (quoting *Iqbal*, 556 U.S. at 678). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

Indeed, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's

elements will not do." *Twombly*, 550 U.S. at 545 (quoting Fed. R. Civ. P. 8(a)(2); *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

In evaluating a motion to dismiss, "the court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the court accept plaintiff's legal conclusions." *Citizens for Responsibility & Ethics in Washington*, 436 F. Supp. 3d at 357–58 (citing *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994); *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002)).

This adoption of the standard ordinarily governing motions to dismiss, to motions seeking judgment on the pleadings, does, too, render applicable the heightened pleading standards of Federal Rule of Civil Procedure 9(b). *State of Cal. ex rel. Mueller v. Walgreen Corp.*, 175 F.R.D. 631, 634 (N.D. Cal. 1997). In particular, "Rule 9(b)'s heightened pleading standard is applicable to claims brought under § 523(a)(2)(A). . ." *In re Aikin*, 2007 WL 3305364, at *2 (Bankr. D.D.C. 2007). *See also*, *In re Casali*, 517 B.R. 835, 841 (Bankr. N.D. Ill. 2014) ("The particularity requirement of Rule 9(b) applies equally to all claims based upon an underlying fraud, including fraud claims under § 523(a)(2)(A).") (citing *In re Munson*, 2010 WL 3768017 (Bankr. N.D. Ill. 2010) (quoting *In re Lane*, 937 F.2d 694, 698 (1st Cir. 1991))).

Where, as here, a pleading sounds in fraud or intentional misrepresentation, a heightened pleading standard is imposed whereby "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Specifically:

> Rule 9(b) requires that the pleader provide the "who, what, when, where, and how" with respect to the circumstances of the fraud. Following the same line of reasoning, a pleading subject to Rule 9(b) scrutiny may not rest on information and belief, but must include an allegation that the necessary information lies within the opponent's control, accompanied by a statement of the facts on which the pleader bases his claim.

*Anderson v. USAA Cas. Ins. Co.*, 221 F.R.D. 250, 253 (D.D.C. 2004) (quoting *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990), cert. den'd, 498 U.S. 941 (1990); citing *Kowal*, 16 F.3d at 1279 n. 3).

### III.    The Plaintiff's Allegations

The allegations of the Complaint—accepted as true for the sole and limited purpose of this motion—pertinently set forth the following:

1.      In 2016, Ms. Browner approached the Plaintiff to propose becoming partners in a business to fix-and-flip (or fix-and-rent) properties. Complaint, DE #1, at ¶ 18.

2.      The Plaintiff demurred to this proposition, *Id.* at ¶ 18, at which point Ms. Browner proposed the Plaintiff instead "become an investor," loaning monies in exchange for annualized interest payments of $5,000.00, *Id.* at ¶ 19.

3.      The proposed loan was to be used to purchase a property located at 4212 Wentworth Road, Baltimore, Maryland 21215 (the "Property"). *Id.* at ¶ 20.

4.      Ms. Browner indicated a written agreement would follow, *Id.* at ¶¶ 22, 24, but the arrangement always remained a "verbal agreement" or "oral agreement," *Id.* at ¶¶ 26, 36.

5.      The Plaintiff wrote a check for $30,000.00 to facilitate closing on the acquisition of the Property, subsequently wiring another $74,900.76 for the same purpose and providing cash in the sum of $5,099.24, also for the same purpose. *Id.* at ¶¶ 27-28.

6.      The Property was acquired in the name of Ms. Browner's son. *Id.* at ¶ 29.

7.      In June 2016, the Plaintiff transferred an additional $6,000.00, post-closing. *Id.* at ¶ 30.

8.        Ms. Browner agreed to pay the sum of $850.00 per month toward retirement of the Plaintiff's loan, making one such payment in November 2019 but thereafter failing to make any such payments. *Id.* at ¶¶ 32, 34.

9.        The Property was sold for $412,500.00 in 2021. *Id.* at ¶ 35.[1]

10.      Ms. Browner has failed to repay the debt to the Plaintiff. *Id.* at ¶ 36.

**IV.**     **Argument: Judgment on the Pleadings is Appropriate**

    **a.**  **The Plaintiff's Claim Under Section 523(a)(2)(A) Does Not Establish Fraud**

A promise to repay a debt, followed by a failure to abide by that promise, does not equate to fraud—period. Yet such is precisely the regime proposed by the Plaintiff in this adversary proceeding; the only falsity alleged of Ms. Browner is a claimed ability to make payments on a loan. If this theory were accepted (and, fortunately, it has been rejected myriad times), every single mortgage, bank loan, and hard money loan would, *ipso facto*, constitute a nondischargeable debt.

As a starting point, the Section 523(a)(2)(A) claim (Count I) does not satisfy the rigors of Rule 9. The Complaint surmises that Ms. Browner "made representations to Plaintiff-Creditor Latonya Griffin consistent with the agreement, that Defendant-Debtor Rita Browner would repay the loans with interest upon the sale and/or renting of the [Property]." Complaint, DE #1, at ¶ 39. But the pleading never states when, where, and how such representations were made, pursuant to the rigors of the *Anderson* Court and its progeny.

---

[1] This is a particularly insincere allegation on the part of the Plaintiff. A review of publicly-available land records show the Property was sold by Ms. Browner's son, on December 31, 2020, for $90,000.00. *See* Deed, attached hereto as Exhibit A. The purchaser then flipped the property, in August 2021, for $412,500.00. *See* Deed, attached hereto as Exhibit B. Ms. Browner is mindful that this motion is confined to the four corners of the Complaint and, as such, these two deeds ought not be considered for their evidentiary value. But these two deeds do speak to the Plaintiff's failure to plead in conformity with the rigors of Rule 9, *Iqbal* and *Twombly*; if the Complaint alleged *who* sold the Property in 2021, such would read very differently than the Complaint in its current form, which merely alleges that a sale occurred in 2021.

The bigger issue, though, is that even if pleaded with particularity, this allegation would not constitute a contention sufficient to render a debt nondischargeable. As observed by the United States Bankruptcy Court for the Eastern District of New York:

> A bare promise to be fulfilled in the future, which is not carried out, does not render a consequent debt nondischargeable under § 523(a)(2)(A). An unfulfilled promise to perform in the future is actionable only in contract. It is insufficient under § 523(a)(2)(A) simply to show that debtor left unfulfilled a prior oral representation or promise. Were this showing sufficient, virtually every oral obligation would give rise to a nondischargeable debt under § 523(a)(2)(A).

*In re Balzano*, 127 B.R. 524, 531 (Bankr. E.D.N.Y. 1991) (citing *Schwalbe v. Gans (In re Gans)*, 75 B.R. 474, 486 (Bankr. S.D.N.Y. 1987)). *See also In re Nabong*, 614 B.R. 67, 74 (Bankr. D. Alaska 2019) (" '[F]or a representation to be actionable under § 523(a)(2)(A), it must be one of existing fact and not simply. . . a declaration of intention.' This is because '[w]ere a creditor able to successfully argue that a debt is nondischargeable simply because a debtor failed to follow through on a future promise to pay, most bankruptcy debts would never discharge. As a result, only current or past acts can form the basis of a fraud claim under § 523(a)(2)(A).' ") (quoting *Narang v. Biswas (In re Biswas)*, 2009 WL 7809011, at *5 (9th Cir. BAP Sept. 2, 2009) (citing *Smith v. Meyers (In re Schwartz & Meyers)*, 130 B.R. 416, 423 (Bankr.S.D.N.Y.1991)); *Yates v. Davis (In re Davis)*, 2013 WL 6796657, at *2 (Bankr. M.D. Ala. Dec. 23, 2013); citing *In re Balzano*, 127 B.R. at 531); *In re Osborne*, 520 B.R. 861, 871 (Bankr. D.N.M. 2014) ("A promise to repay alone is typically insufficient to support a claim under § 523(a)(2)(A).") (citing *In re Balzano*, 127 B.R. at 531); *In re Harrison*, 301 B.R. 849, 854 (Bankr. N.D. Ohio 2003) (". . . a broken promise to repay a debt, without more, will not sustain a cause of action under § 523(a)(2)(A).") (citing *Jacobs v. Ballard (In re Ballard)*, 26 B.R. 981, 985 (Bankr. D. Conn. 1983)).

To be sure, there are exceedingly narrow circumstances under which a debtor's obligations on a contractual debt may be deemed nondischargeable, but such scenarios require an exacting degree of scienter and facially conscious-shocking allegations. *See, e.g.*, *In re Swanson*, 398 B.R. 328, 338 (Bankr. N.D. Iowa 2008) (finding binge credit card charges—incurred in proximity to when a debtor consulted with bankruptcy counsel—to be nondischargeable).

Here, the Complaint comes well shy of alleging any facts that would come anywhere near transmuting an ordinary unsecured debt into a nondischargeable albatross to be hung around Ms. Browner's neck in perpetuity. It is not merely that the Plaintiff eschews seemingly every rigor of Rule 9 but, too, that the Plaintiff's strategic utilization of imprecise pleading leads to allegations that the Property was sold for $412,500.00 but neglects to mention that such sale came from a *subsequent* purchaser who acquired the asset from Mr. Browner's son for a mere $90,000.00.

At core, a promise to repay a debt does not equate to the rendering of "false pretenses, a false representation, or actual fraud…" 11 U.S.C. § 523(a)(2)(A). In fact, even if Mr. Browner were alleged to have expressly represented that she could repay the debt (and the Complaint is notably devoid of any such allegation), the theory would still fall well shy of the nondischargeability standard, which expressly excludes "statement[s] respecting the debtor's . . . financial condition. . ." *Id.*

Judgment is accordingly properly entered into favor of Ms. Browner, and against the Plaintiff, on Count I of the Complaint.

### b.  Count II of the Complaint Does Not Present a Viable Claim

The Plaintiff's second cause of action seeks a finding of nondischargeability on the theory that Ms. Browner owes a debt for "willful and malicious injury," pursuant to Section 523(a)(6) of Title 11 of the United States Code. The Complaint falls short of pleading such a claim in a manner

capable of surviving the barest of scrutiny, let alone doing so in a manner compliant with the rigors of Rule 9.

It appears the Plaintiff's theory here sounds in the tort of conversion. Complaint, DE #1, at ¶ 46 (conclusively alleging Ms. Browner "willfully and maliciously converted the payments issued by" the Plaintiff). Assuming so, this count is, too, subject to the heightened pleading rigors of Rule 9. *See, e.g.*, *In re Billon*, 2021 WL 2908970, at *4 n. 4 (Bankr. N.D. Ill. July 12, 2021) (". . . a section 523(a)(6) claim must always be based on some 'independent tort.' If that independent tort is fraud, Rule 9(b) applies.") (citing *United Providers, Inc. v. Pagan (In re Pagan)*, 564 B.R. 324, 326 (Bankr. N.D. Ill. 2017)).[2] *See also Daly v. Castro Llanes*, 30 F. Supp. 2d 407, 414 (S.D.N.Y. 1998) ("Plaintiff's claim of conversion, which is an unauthorized taking of property, rests on an allegation of fraudulent taking, and is therefore subject to the pleading requirements of Rule 9(b).") (citing *Ethanol Partners Accredited v. Wiener, Zuckerbrot, Weiss & Brecher*, 635 F.Supp. 18, 22 (E.D. Pa. 1985)); *Desmond v. Taxi Affiliation Services LLC*, 344 F. Supp. 3d 915, 928 (N.D. Ill. 2018) (applying Rule 9 to claims for conversion)).

### i.  The Tort of Conversion is Inapplicable to Monetary Claims

Whether pleaded in accord with Rule 9 or not, the Plaintiff's theory of conversion (the lone "independent tort" underlying the Section 523(a)(6) claim) necessarily fails. The whole gist of the Plaintiff's allegations is that Ms. Browner took the Plaintiff's money and did not then repay the

---

[2] As noted by the *Billon* Court, a number of cases suggest Rule 9 is not applicable to claims under Section 523(a)(6) since the statutory provision "contains no mention of fraud." *In re Billon*, 2021 WL 2908970, at *4, n. 4 (quoting *Horrigan v. Wald (In re Wald)*, 2012 WL 2564367, at *9 (Bankr. W.D. Tex. July 2, 2012)). The key inquiry is not whether Section 523(a)(6) *per se* requires compliance with Rule 9 but, rather, whether the independent tort underlying the Section 523(a)(6) claim is of a variety that, unto itself, implicates the rigors of Rule 9.

Plaintiff in accord with vaguely-defined interest terms. But such a theory, even if true, would not create liability for the tort of conversion.

As a matter of law, "a conversion action 'is not maintainable for money unless there be an obligation on the part of the defendant to return the specific money entrusted to his care;' otherwise, there is 'only a relationship of debtor or creditor,' and a conversion action 'will not lie against the debtor.' " *Roman v. Sage Title Group, LLC*, 146 A.3d 479, 483–84 (Md. App. 2016), aff'd, 166 A.3d 1026 (Md. 2017) (quoting *Lawson v. Commonwealth Land Title Ins. Co.*, 518 A.2d 174, 177 (Md. App. 1986)). Indeed:

> ". . .[t]he general rule is that monies are intangible and, therefore, not subject to a claim for conversion." One reason for the rule is that money is often commingled: "if a defendant maintains possession of the proceeds in question, but commingles it with other monies, the cash loses its specific identity," and thus would be considered intangible property.

*Roman*, 146 A.3d at 483 (quoting *Allied Investment Corp. v. Jasen*, 731 A.2d 957, 967 (Md. 1999)). *See also Yah Kai World Wide Enterprises, Inc. v. Napper*, 195 F. Supp. 3d 287, 324 (D.D.C. 2016) ( " '[a]s a general rule, money, i.e., currency, is not subject to a claim of conversion' under Maryland law. . .") (quoting *Darcars Motors of Silver Spring, Inc. v. Borzym*, 841 A.2d 828, 834, n. 3 (Md. 2004); citing *Tillery v. Borden*, 2010 WL 3517015, at *8 (D. Md. Sept. 3, 2010)).

Here, the Plaintiff alleges that monies were loaned to pay the closing costs on the Property, with Ms. Browner then having some vaguely-articulated obligation to repay the funds. This series of allegations is facially antithetical to a notion of Ms. Browner "maintain[ing] possession of the

proceeds in question," *Roman*, 146 A.3d at 483, and thusly incapable of inviting liability under the theory of conversion.[3]

### ii.  The Economic Loss Rule Prohibits Recovery for Conversion

The inapplicability of the tort of conversion to claims for unpaid promissory notes (or, as here, allegedly-breached oral payment contracts) is further amplified by the economic loss rule. Under both District of Columbia and Maryland law, solely-pecuniary claims are not cognizable in tort, with parties being restricted to seeking relief on contractual—or quasi-contractual—theories of recovery. The Plaintiff does not assert any such claim here, though, with seeming cognizance that a breach of contract is a far cry from the variety of "willful and malicious" injury requisite to support a Section 523(a)(6) claim.

As noted by the District of Columbia Court of Appeals, "'[g]enerally, under the 'economic loss' rule, a plaintiff who suffers only pecuniary injury as a result of the conduct of another cannot recover those losses in tort.'" *Aguilar v. RP MRP Washington Harbour, LLC*, 98 A.3d 979, 982 (D.C. 2014) (quoting *Apollo Group, Inc. v. Avnet, Inc*., 58 F.3d 477, 479 (9th Cir. 1995)). Specifically, "as a matter of longstanding policy in courts around the country, '[w]here pure economic loss is at issue[,] not connected with any injury to one's body or property, ... the reach of legal liability is quite limited.' " *Aguilar*, 98 A. 3d at 983 (quoting *In re Exxon Valdez*, 1994

---

[3] Ms. Browner assumes applicability of Maryland law since the allegations concern a loan made in Maryland, for acquisition of a Maryland property, subsequently giving rise to a state court lawsuit in Maryland. However, application of District of Columbia law would beget identical analysis. *See, e.g.*, *Campbell v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 130 F. Supp. 3d 236, 258 (D.D.C. 2015) (" 'Generally speaking, conversion applies to chattel; however, '[m]oney can be the subject of a conversion claim if the plaintiff has the right to a specific identifiable fund of money.' 'A cause of action for conversion, however, may not be maintained to enforce a mere obligation to pay money.' ") (quoting *McNamara v. Picken*, 950 F.Supp.2d 193, 194 (D.D.C. 2013) (quoting *Cannon v. Wells Fargo Bank, N.A.*, 926 F.Supp.2d 152, 176 (D.D.C. 2013)); citing *Borzym*, 841 A.2d at 833 n. 3; quoting *Curaflex Health Servs., Inc. v. Bruni*, 877 F.Supp. 30, 32 (D.D.C. 1995)).

WL 182856, at *8 (D. Alaska 1994) aff'd, 104 F.3d 1196 (9th Cir. 1997); citing *Robins Dry Dock & Repair Co. v. Flint*, 275 U.S. 303, 309 (1927)).

The law in Maryland is no different: "The economic loss doctrine 'prohibits a plaintiff from recovering in tort for purely economic losses—losses that involve neither a clear danger of physical injury or death, nor damage to property other than the product itself.' " *Pac. Indem. Co. v. Whaley*, 572 F. Supp. 2d 626, 628 (D. Md. 2008) (quoting *Morris v. Osmose Wood Preserving*, 667 A.2d 624, 630 (Md. 1995)).

Here, the Plaintiff's claim for conversion—which, again, is the sole tort underlying the Section 523(a)(6) theory of nondischargeability—is the variety of purely-economic claim forbade by the economic loss rule. The Plaintiff does not allege that the putative conversion has invited any physical injury, much less that it has occasioned death. And the tort is thusly non-viable as a matter of law, being nothing more than an overly-ambitious—and legally non-cognizable—effort to transmute an alleged contractual debt into a claim sounding in tort.

### iii.   The Plaintiff Does Not Allege Willful and Malicious Injury

Even putting aside that (i) a claim for conversion cannot be founded upon the putative taking of monies; and (ii) the Plaintiff's theory of conversion is belied by the economic loss rule, Count II of the Complaint still suffers an additional fatal defect: the Plaintiff does not actually allege anything constituting a "willful and malicious injury." Nor does the fact pattern instantly at issue suggest such an allegation could be made.

Under this Court's precedent, an allegation of a "willful and malicious injury" requires a showing of "(1) a wrongful act; (2) done intentionally; (3) which necessarily causes injury; and (4) without just cause and excuse." *In re Holland*, 2013 WL 2190164, at *4 (Bankr. D.D.C. May

21, 2013) (quoting *In re Khaligh*, 338 B.R. 817, 831 (B.A.P. 9th Cir. 2006), aff'd, 506 F.3d 956

(9th Cir. 2007)).[4]

Here, it is unclear what "wrongful act" is alleged. The Complaint surmises that Ms.

Browner borrowed monies and then failed to repay them; as noted *supra*, if this was fodder

sufficient to constitute a "wrongful act" for Section 523(a)(6) purposes, this Honorable Court's

consumer bankruptcy docket would grind to an assured halt. A failure to repay borrowed monies

underlies every single discharge of credit card debt, bank loan debt, private debt, and mortgage

debt. Surely this cannot be the "wrongful act" underpinning of a nondischargeability claim.

Similarly, the Complaint does not sufficiently allege intentionality. Taking the Plaintiff's

assertions as true, Ms. Browner borrowed monies to close on the purchase of a fix-and-flip project

and then used the monies to close on the purchase of a fix-and-flip project. This is not a viable

theory of an intentionally wrongful action; this is a viable assertion of Ms. Browner having sadly

joined the legions of failed fix-and-flip prospectors in an era of low interest rates and deceptive

HGTV montages.

Equally, the Complaint does not set forth how the alleged actions "necessarily cause[]

injury." While the Plaintiff certainly alleges that she has been financially injured through a loss of

her monies, the question for Section 523(a)(6) purposes is whether that injury was a foregone and

necessary result at the time of the underlying action (i.e., the date on which the funds were loaned).

Under Supreme Court precedent, "debts arising from recklessly or negligently inflicted injuries do

---

[4] *In re Holland* cites to "*In re Kahligh*, 333 B.R. 817, 831 (9th Cir.B.A.P.2006)." *In re Holland*,
2013 WL 2190164, at *4. However, there does not appear to be any reported opinion for a case
known as "In re Kahligh" and the 831st page of the 333nd volume of the Bankruptcy Reporter is
part of the Bankruptcy Appellate Panel of the Eighth Circuit's holding in *In re Bauder*, 333 B.R.
828 (B.A.P. 8th Cir. 2005), a case that addresses a Section 727 dispute. It is accordingly reasonably
believed the proper citation is to *In re Khaligh*, which does contain the subject quotation.

not fall within the compass of § 523(a)(6)." *Kawaauhau v. Geiger*, 523 U.S. 57, 64 (1998). *See also In re Kemmerer*, 156 B.R. 806, 810 (Bankr. S.D. Ind. 1993) (" . . . possibility is not substantial certainty, and substantial certainty of harm is necessary under section 523(a)(6)."); *In re Glass*, 207 B.R. 850, 853 (Bankr. E.D. Mich. 1997) ("An act is not malicious unless harm is 'substantially certain' to follow."). Yet the pleading in this case does nothing to show a necessary—and inevitable—causal connection between borrowing monies to close on a real estate asset and then being unable to repay those monies.

To be sure, on the face of the Complaint, it is altogether unclear how the Plaintiff believes a loan gone bad equates to a nondischargeable debt. The Plaintiff herself acknowledges the monies were spent closing on the Property—there is no allegation that the funds were stolen at closing and expended on some other, illicit purpose. And the Plaintiff, equally, acknowledges that the loan was the subject of bargaining: the Plaintiff did not want to be a business partner and, instead, opted to extend credit at an above-market interest rate, hoping to be repaid a return superior to that available through more conservative investment products. This does not amount to a series of actions destined to cause injury; this amounts to a risky loan, aimed at profiting off a fix-and-slip operation, that went bad. And, as noted *passim*, that has all the makings of an ordinary monetary debt, with none of the trappings of a willful and malicious injury nondischargeable under Section 523(a)(6).

The final element under *Holland* is that the injury be "without just cause and excuse." Again, however, the Plaintiff has not alleged anything along these lines. Rather, the Complaint shows only an unsecured loan used to close on a real estate purchase, a single payment thereupon, and an ensuing bankruptcy. Yes—the Complaint does allege the Property was later resold for a much larger sum of money. But, as observed *supra*, the Plaintiff seems to strategically come well short of alleging that it was Ms. Browner (or her son) who later made that sale since, in actuality,

they did not. Peter Minuit purchased a tract of land for "a few trinkets," *United States v. Manufacturers Hanover Tr. Co.*, 240 F. Supp. 867, 890 (S.D.N.Y. 1965), though a penthouse on that island now regularly sells for more than $10 million; such does not nearly equate to an *Iqbal*-compliant, *Twombly*-compliant, or Rule 9-compliant allegation that Peter Minuit profits off every jaw-dropping conveyance of real estate in Manhattan.

That the Plaintiff has not alleged a willful and malicious injury is little surprise; Section 523(a)(6) is, almost patently, not intended to address breaches of loan agreements. *See, e.g.*, *Lockerby v. Sierra*, 535 F.3d 1038, 1044 (9th Cir. 2008) ("A breach of contract is not "willful and malicious conduct" under § 523(a)(6) unless accompanied by conduct that would give rise to a tort action under state law."); *In re Pagan*, 564 B.R. at 326 ("An intentional breach of contract, however, is not enough to support a claim under § 523(a)(6) unless the debtor's conduct also gives rise to an independent tort.") (citing *Wish Acquisition, LLC v. Salvino (In re Salvino)*, 373 B.R. 578 (Bankr. N.D. Ill. 2007)). And it is thusly appropriate to enter judgment in Ms. Browner's favor on this cause of action.

### c.  The Plaintiff's Claims Run Afoul of the Statute of Frauds

A significant portion of the problem with construing the Plaintiff's two claims to render a debt nondischargeable is found in the Plaintiff's legal entitlement, *vel non*, to recovery of that debt in the first instance. For Mr. Browner to owe a nondischargeable obligation to the Plaintiff, Ms. Browner must first have *some* obligation to the Plaintiff. Under both Maryland and District of Columbia law, it does not appear any such obligation is actually extant.

The statute of frauds expressly forbids efforts to collect on unwritten agreements with a duration in excess of one year. *See* Md. Code, Cts. & Jud. Proc. § 5-901 ("Unless a contract or agreement upon which an action is brought, or some memorandum or note of it, is in writing and

signed by the party to be charged or another person lawfully authorized by that party, an action

may not be brought: . . . (3) On any agreement that is not to be performed within 1 year from the

making of the agreement."); D.C. Code § 28-3502 ("An action may not be brought . . . upon an

agreement that is not to be performed within one year from the making thereof, unless the

agreement upon which the action is brought, or a memorandum or note thereof, is in writing. . .");

Here, the Plaintiff alleges that she loaned monies in April 2016, with a subsequent loan

being made in June 2016. Complaint, DE #1, at ¶¶ 27-31. The Complaint further surmises that Ms.

Browner "agreed to repay" this debt, in installments of $850.00 per month, "beginning November

2019." *Id.* at ¶ 32. And there thusly appears to be a loan, payable over a period of 137 months,

with the first such payment coming due slightly over three years after the date of the agreement's

making. Or, stated otherwise, there is alleged to be an agreement that will span at least 14 years.

Yet, as expressly acknowledged by the Plaintiff, this was only "a verbal agreement." *Id.* at ¶ 21.

The Plaintiff seemingly tries to end-run this legal requirement by alleging a subsequent

writing to memorialize key terms:

> On January 2, 2020, Defendant-Debtor Rita Browner sent a text message and/or
> email to Plaintiff-Creditor Latonya Griffin wherein she confirmed in writing that
> she agreed to pay Plaintiff-Creditor Latonya Griffin $850.00 a month towards the
> Wentworth property loan. Defendant-Debtor Rita Browner further specified that
> each payment is to be paid within the month and deducted from the outstanding
> balance of the loan in the amount of $105,000.00.

Complaint, DE #1, at ¶ 33. But this "fix" is almost more problematic than the underlying unwritten

agreement.

The "text message and/or email" is appended to the Complaint and is even shorter than the

foregoing paragraph, reading only "My payment of $850/mo is payback for Wentworth and it was

$105k." Complaint, DE #1, at p. 27. There is a second e-mail, also appended to the Complaint,

that is slightly wordier, albeit still quite pithy: "Hi Tonya I agreed to pay you $850/mo starting

11/19 towards Wentworth as you used $105k from your 401K. Each pmt to be paid within the month and deducted from outstanding balance. It's unfortunate our business venture did not materialize but our friendship remains." *Id.* at p. 26.[5]

First, neither of these writings evidence the existence of an agreement between the parties at the time of the putative loans' making; both are merely acknowledgments that the Plaintiff expended monies on the acquisition of the Property and that Ms. Browner wishes to make the Plaintiff whole for such. One does state "I agreed to pay you," but makes no reference to when such an agreement was made. And these may thusly be viewed as evidence of nothing more than a charitable or conciliatory desire to make a friend whole for monies lost on an investment gone bad.

Second, and far more importantly, neither of these writings are contemporaneous—by a long shot. The Plaintiff claims to have loaned monies in 2016; these e-mails and/or text messages are from 2020. It is not just that the writings come *after* the one-year realm of the statute of frauds; it is, too, that under both Maryland and District of Columbia law, the applicable statute of limitations would have elapsed prior to these writings being sent. *See* Md. Code, Cts. & Jud. Proc. § 5-101 ("A civil action at law shall be filed within three years from the date it accrues unless another provision of the Code provides a different period of time within which an action shall be commenced."); D.C. Code § 12-301 (also setting forth a three-year limitations period).[6]

---

[5] There is a symbol at the end of the second sentence that is not readily decipherable. It appears to be a heart sitting atop a downward arrow, bearing some – but not complete – resemblance to the symbol most commonly associated with the Artist Formerly Known as Prince.

[6] Ms. Browner does not, for purposes of this motion, assert the debt to be time-barred; she merely observes the debt to be barred by the statute of frauds. The applicable limitations period is noted only to highlight how thoroughly non-contemporaneous the alleged writings are in the prism of the factual contentions set forth by the Plaintiff.

The non-cognizable nature of the Plaintiffs' claims matters ultimately for a fairly simple reason: in order for a debt to be nondischargeable, there must first be a debt. In this case, the Complaint does not establish any such obligation.

## V.    Argument: The Plaintiff Has Unclean Hands

Finally, judgment is appropriately entered in favor of Ms. Browner for the simple reason that the Complaint is a wholesale admission of the Plaintiff knowingly and willingly violating the Automatic Stay. The Plaintiff sets forth a methodical timeline in which (i) suit is filed in state court; (ii) Ms. Browner seeks bankruptcy relief before an answer comes due; and (iii) the Plaintiff nonetheless persists in endeavoring to obtain a default judgment, months later, without first seeking stay relief. *Ex turpi causa non oritur actio*.

The Automatic Stay prohibits the "continuation . . . of a judicial . . . action or proceeding against the debtor that was . . .  commenced before the commencement of the case under this title. . ." 11 U.S.C. § 362(a)(1).

Here, the Plaintiff perfected service of her lawsuit against Ms. Browner on March 1, 2023. Complaint, DE #1, at ¶ 15. Twenty-eight days later, Ms. Browner sought bankruptcy relief on March 29, 2023. *Id.* at ¶ 1. The petition for relief thusly came two days before Ms. Brown's answer was due. Md. Rule 2-321(a) ("A party shall file an answer to an original complaint, counterclaim, cross-claim, or third-party claim within 30 days after being served. . ."),

Rather than abide by the Automatic Stay, however, the Plaintiff then tried—some three months later—to obtain a default judgment against Ms. Browner. Complaint, DE #1, at ¶ 16. It is not merely that the Plaintiff tried to obtain a default before Ms. Browner's answer was actually due, 11 U.S.C. § 108(b)(1); it is, more importantly, that the Plaintiff tried to obtain a default in violation of the Automatic Stay.

17

Under this Honorable Court's precedent, an action in contravention of the Automatic Stay is not merely voidable but, indeed, void. *See, e.g.*, *In re: HP Bennett, LLC*, 2023 WL 8881858, at *4 (Bankr. D.D.C. Dec. 22, 2023) ("This Court agrees with the majority that acts taken in violation of the automatic stay are void.") (citing *Stancil v. Bradley Invs., LLC (In re Stancil)*, 487 B.R. 331, 338 (Bankr. D.D.C. 2013); *In re Sklar*, 626 B.R. 750, 762–63 (Bankr. S.D.N.Y. 2021)). And the Plaintiff's efforts to obtain an unlawful default judgment are thusly nullities. But the efforts do, nonetheless, have appreciable consequences.

As the United States Court of Appeals for the Ninth Circuit has noted, in collecting various citations from the Supreme Court, the Fourth Circuit, and other Ninth Circuit precedent:

> A plaintiff asking a court for equitable relief "must come with clean hands." Specifically, the doctrine of unclean hands requires that a plaintiff "shall have acted fairly and without fraud or deceit as to the controversy in issue." Because bankruptcy courts are courts of equity, **a plaintiff deemed to have unclean hands cannot obtain a judgment of nondischargeability**.

*Northbay Wellness Group, Inc. v. Beyries*, 789 F.3d 956, 959 (9th Cir. 2015) (quoting *Johnson v. Yellow Cab Transit Co.*, 321 U.S. 383, 387 (1944); *Ellenburg v. Brockway, Inc.*, 763 F.2d 1091, 1097 (9th Cir. 1985); citing *Young v. United States*, 535 U.S. 43, 50 (2002); *Republic of Rwanda v. Uwimana (In re Uwimana)*, 274 F.3d 806, 810 (4th Cir.2001) abrogated on other grounds by *Bullock v. BankChampaign, N.A.*, 569 U.S. 267, 271 (2013)) (emphasis added).

The question thusly becomes whether or not taking actions in contravention of the Automatic Stay gives the Plaintiff unclean hands. Case law instructs the answer to be in the affirmative. *See, e.g.*, *Overland Direct, Inc. v. Aframian*, 2023 WL 2401768, at *4 (C.D. Cal. Mar. 7, 2023) ("Finally, as the action is a stay violation, Aframian may have a defense of unclean hands—a defense only the bankruptcy court may adjudicate since it necessarily implicates the automatic stay. A claim filed in violation of the stay may also be dismissed.") (citing *In re B-E*

*Holdings, Inc.*, 228 B.R. 414, 420-21 (E.D. Wis. 1992); *Matter of Coastal Group, Inc.*, 100 B.R. 177, 178 (Bankr. D. Del. 1989)).

Under *Northbay Wellness Group, Inc*. and the authorities relied upon therein, the Plaintiff's unclean hands are, in turn, a bar to the Plaintiff obtaining a judgment of nondischargeability in this suit. The Plaintiff has elected to disregard the Automatic Stay (and the discharge injunction) to advance her efforts to obtain a judgment against Ms. Browner, whilst simultaneously asking this Honorable Court—in equity—to render nondischargeable any resulting judgment. This is a series of events that ought not be equitably countenanced.

## VI.    Conclusion

By way of summary, the Plaintiff: (i) is seeking to have a debt declared nondischargeable on the basis of fraud, despite having not made allegations that would give rise to an assertion of fraud; (ii) is alternatively seeking to have the debt declared nondischargeable as a willful and malicious injury, pegged to the underlying tort of conversion, despite (a) a claim for conversion being non-cognizable to a monetary debt; and (b) being non-cognizable under the economic loss rule; (iii) alleges a willful and malicious injury despite having not pleaded facts that would support a finding of a willful and malicious injury; (iv) bases her theory of indebtedness on a theory facially at odds with both the Maryland and District of Columbia statute of frauds; and (v) has pursued state court litigation in violation of the Automatic Stay (and, subsequently, in violation of the discharge injunction), necessitating her now asking for a finding of nondischargeability whilst having unclean hands.

These are not realities that can support the ongoing maintenance of this lawsuit. Judgment is properly entered—for each of the foregoing reasons, individually, and all of the foregoing reasons, cumulatively—in favor of Ms. Browner.

WHEREFORE, Rita Browner respectfully prays this Honorable Court (i) enter judgment on the pleadings, in her favor and against the Plaintiff; and (ii) afford such other and further relief as may be just and proper.

Respectfully submitted,

Dated: January 1, 2024                    By: /s/ Maurice B. VerStandig
                                          Maurice B. VerStandig, Esq.
                                          Bar No. MD18071
                                          The VerStandig Law Firm, LLC
                                          9812 Falls Road, #114-160
                                          Potomac, Maryland 20854
                                          Phone: (301) 444-4600
                                          Facsimile: (301) 444-4600
                                          mac@mbvesq.com
                                          *Counsel for Rita Browner*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 1st day of January, 2024, a copy of the foregoing was served electronically upon filing via the ECF system, with copies to all persons registered to receive notice.

/s/ Maurice B. VerStandig
Maurice B. VerStandig

20