**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| In re: | * | |
| **RITA BROWNER,** | * | Case No.: 23-00087-ELG |
| Debtor. | * | |
| * * * * * * * * * * * * | | |
| **LATONYA GRIFFIN,** | * | |
| Plaintiff, | * | |
| v. | * | Adv. Pro.: 23-10015-ELG |
| **RITA BROWNER,** | * | |
| Defendant/Debtor. | * | |
| * * * * * * * * * * * * * | | |

**OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS**

The Plaintiff, Latonya Griffin ("Ms. Griffin" or "Plaintiff"), by and through her undersigned counsel, Richard L. Costella and Tydings & Rosenberg LLP; hereby files this Opposition (the "Opposition") to the Motion for Judgment on the Pleadings (the "Motion") filed by Rita Browner (the "Debtor" or "Defendant"). In support of her Opposition, Ms. Griffin states as follows:

**INTRODUCTION**

With its flowery prose, extensive use of Latin, and widespread citation to what is purported to be controlling law, the Debtor's Motion, at first glance, appears to raise valid deficiencies with the manner in which the causes of action are plead in the Complaint (as defined herein). In reality, however, when the Motion is stripped to its core, it can best be described as "all hat and no cattle" as the Debtor takes a shot-gun approach to attacking the Complaint and relies on broad generalizations in what the Motion asserts is controlling law. Upon further examination of the

factual and legal arguments contained in the Motion, it is abundantly clear that the Motion prioritizes flair and display at the expense of meaningful analysis and argument development.

## FACTUAL BACKGROUND

### A.  The Parties.

The Debtor filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code on March 29, 2023 (the "Petition Date").  The Debtor can best be described as a serial bankruptcy filer having filed at *least* five (5) prior bankruptcy cases.  *See* Main Case Docket.  The Debtor is also no stranger to financial scams having previously been convicted of loan sharking charges related to a fraudulent foreclosure rescue business.  *See Browner v. District of Columbia*, 549 A.2d 1107 (D.C. Ct. App. 1988).

Ms. Griffin is a creditor in the bankruptcy case and the Plaintiff in this adversary proceeding (the "Adversary Proceeding").

### B.  The Debtor's Obligations.

As described in detail in the Complaint (as defined below), in April and June of 2016 Ms. Griffin provided the Debtor, who she considered a friend, with the $116,000 that is the subject of this adversary proceeding (the "Debt").  The money provided to the Debtor was purported to be an investment in the Debtor's business of renovating, renting, and selling real estate.[1]

Ultimately, the funds provided to the Debtor were utilized to purchase the real property better known as 4212 Wentworth Road, Baltimore, MD 21215 (the "Property"). The Debtor made numerous false representations to Ms. Griffin in conjunction with the Debt and the Property, including but not limited to promising to repay the Debt upon the sale or rental of the Property,

---

[1] Ms. Griffin initially balked at providing money to the Debtor for use in her business, but the Debtor continued to approach Ms. Griffin with various proposals and Ms. Griffin, believing the Debtor to be a friend, ultimately succumbed.

6087412.1

and guaranteeing a rate of return in excess of that being earned on Ms. Griffin's retirement account. The Debtor also promised to memorialize the Debt in a written loan document and make monthly payments of $850.00.

The Debtor never intended to, and in fact never did, fulfill the numerous promises made to Ms. Griffin.[2] Instead, the Debtor sold the Property and absconded with the proceeds from the sale.

**C.      The Adversary Proceeding.**

Ms. Griffin initiated this Adversary Proceeding by filing her Complaint For A Determination Excepting Debt from Discharge (the "Complaint") on July 3, 2023. The Complaint seeks to have the Debt deemed non-dischargeable pursuant to sections 523(a)(2) and (a)(6) of the Bankruptcy Code.

## ARGUMENT

**A.      The Legal Standard**

"After the pleadings are closed—but early enough not to delay trial[3]—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c); *Brodie v. Jackson*, 954 F.Supp.2d 31, 35 (D.C. Dist. 2013). A motion for judgment on the pleadings essentially constitutes a delayed motion under Rule 12(b)(6) and, therefore, the standard of review on a motion for judgment on the

---

[2] In footnote 1 to the Motion, the Debtor attacks Ms. Griffin's veracity with respect to the allegations in the Complaint relating to the ultimate sale of the Property. Although the Debtor acknowledges that the Motion should be constrained to the four corners of the Complaint, she attaches two deeds to the Motion and then attempts to disclaim their evidentiary value—and then actually refers to and relies on the deeds again later in the Motion. *See* Motion at p. 7. Moreover, the Debtor spends considerable time discussing the ultimate sale of the Property and who sold what to who. Not only is this discussion and the attachment of the deeds not proper under the applicable standard for a motion for judgment on the pleadings, but it is also a complete red herring. There is no dispute that the money provided by Ms. Griffin was utilized to purchase the Property and the Debtor sold the Property and kept the proceeds. Furthermore, the Debtor's discussion regarding the sale of the Property only raises further questions regarding the sale of the Property that need to investigated through the discovery process—for example, why was the Property sold for $100,000 in December 2020 and then re-sold for over $400,000 only eight (8) months later.

[3] The Debtor filed the Motion, and a corresponding Motion to Stay Discovery, the day after her discovery responses were due and twelve (12) days before the close of discovery. Thus, it follows that the adjudication of the Motion will necessarily delay the trial in this matter.

6087412.1

pleadings is virtually identical to the standard for a motion to dismiss. *See, e.g., Transworld Prods. Co. v. Canteen Corp.,* 908 F.Supp. 1, 2 (D.C. Dist. 1995); *Holland v. FCA US LLC*, 656 F. App'x 232, 236 (6th Cir. 2016); *Anders v. Cuevas*, 984 F.3d 1166 , 1174 (6th Cir. 2021) "A court will grant a motion for judgment on the pleadings only if, after the close of the pleadings, no material fact remains in dispute, and the moving party is entitled to judgment as a matter of law." *Transworld Prods.,* 908 F.Supp. at 2.

"Under Federal Rule of Civil Procedure 12(c), the Court must accept the nonmovant's allegations as true and should view the facts in the light most favorable to the nonmovant." *Brodie,* 954 F.Supp.2d at 35. *See also Transworld Prods.,* 908 F.Supp. at 2; *Harrison v. Westinghouse Savannah River Co.,* 176 F.3d 776, 783 (4th Cir. 1999) (Rule 12(b); *Sher v. JPMorgan Chase Funding (In re TMST, Inc.),* 610 B.R. 807 (Bankr. D. Md. 2019) (Rule 12(b)). A trial court will not grant a motion for judgment on the pleadings merely because the court doubts the plaintiff's ability to prove the allegations of the complaint at trial." *Transworld Prods.,* 908 F.Supp. at 2. "The Court will not dismiss plaintiff's complaint unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim that would entitle plaintiff to relief." *Id.*

To defeat a motion for judgment on the pleadings, a claim "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When assessing plausibility, well-pleaded factual allegations must be accepted as true and such facts and all reasonable inferences derived from those allegations must be viewed in the light most favorable to the plaintiff. *See Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). Plausibility is established when the claim's factual allegations give rise to an inference of liability sufficient to move the claims "across the line from conceivable to plausible." *Iqbal*, 556 U.S. at 678; *In re TMST*, 610 B.R. at 823.

Plausibility does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence supporting the allegations in the Complaint. *Iqbal*, 556 U.S. at 678; *Bell Atlantic Corp. v. Twombly*, 550 US 544 (2007). In other words, it need not appear from the claim that the plaintiff's claims are likely to succeed, and even though "the factual allegations in a complaint must make entitlement to relief plausible and not merely possible, what Rule 12(b)(6) does not countenance are dismissals based on a judge's disbelief of a complaint's factual allegations." *McLean v. United States*, 566 F.3d 391, 399 (4th Cir. 2009) (citing *Neitzke v. Williams*, 490 U.S. 319, 327 (1989); *Advanced Health-Care Services, Inc. v. Radford Community Hospital,* 910 F.2d 139, 145 n.8 (4th Cir. 1990) (complaint should not be dismissed 'merely because the court doubts that the plaintiff will ultimately prevail; so long as a plaintiff colorably states facts which, if proven, would entitle him to relief, the motion to dismiss should not be granted.)

**B.     Ms. Griffin's Claim Under Section 523(a)(2)(A) of the
        Bankruptcy Code Does Establish Fraud.**

The Debtor's contention that Plaintiff's claim under Section 523(a)(2)(A) does not establish fraud is without merit.

"Section 532(a)(2)(A) was designed by Congress to except from discharge those obligations arising from conduct that amounts to actual fraud under the common law." *First Deposit Nat'l Bank*, 222 B.R. 497 (Bankr. W.D. N.C. 1998). "Rule 9 of the Federal Rules of Civil Procedure, applicable to bankruptcy proceedings by Rule 7009 of the Federal Rules of Bankruptcy Procedure, requires a party to plead fraud with particularity." *In re Dunlap*, 458 B.R. 301, 341 n. 23 (E.D. Va. Bankr. 2011). "Rule 9(b) of the Federal Rules of Civil Procedure requires that all averments of fraud or mistake must state such circumstances constituting fraud or mistake with particularity. Rule 9(b) however, also provides that intent, knowledge and other conditions of

6087412.1

mind of a person may be averred generally." *In re Stahl*, 222 B.R. 497, 502 (Bankr. W.D. N.C. 1998).

"Rule 9(b)'s particularity requirement ensures that the opponent has notice of the claim, prevents attacks on his reputation where the claim for fraud is unsubstantiated, and protects him against a strike suit brough solely for its settlement value." *Anderson v. USAA Cas. Ins. Co.*, 221 F.R.D. 250, 253 (D.C. Dist. 2004). "Because the rule is chiefly concerned with the elements of fraud, the circumstances that the claimant must plead with particularity include matters ***such as time, place, and content of the false misrepresentations, the misrepresented fact, and what the opponent of the claimant lost as a consequence of the alleged fraud***." *Id*. "That said, Rule 9(b)'s particularity requirement does not abrogate Rule 8's general requirements that a pleading contain a short and plain statement of the claim, and that each averment be simple, concise, and direct." *Id*. "Rule 9(b) simply requires the pleader to provide a higher degree of notice by adequately alleging all of the requisite elements for the cause of action invoked." *Id*.

Here, the Complaint establishes the timing and content of the Defendant's false representations, as well as the misrepresented facts, in accordance with Rule 9(b)'s particularity requirement. The Complaint states that in the Spring of 2016, the Defendant approached Ms. Griffin with a business proposition, communicating to Ms. Griffin that if she provided the Defendant with money to purchase a residence, the Defendant would beat the interest rate Ms. Griffin was receiving on her retirement fund, and the Defendant would repay Ms. Griffin upon the sale and/or rental of the residence. *See* Compl. ¶¶ 18-20, 22, 25. The Complaint also identifies what Ms. Griffin "lost as a consequence of the alleged fraud[,]" namely, Ms. Griffin's payments totaling $116,000 to the Debtor. As such, the Complaint clearly establishes the timing and content

of the false misrepresentations, the misrepresented facts, and what Ms. Griffin lost as a consequence of the Defendant's fraud, satisfying the rigors set forth by the *Anderson* Court.

Additionally, the Debtor's contention that Ms. Griffin's claim amounts to nothing more than a broken promise to repay a debt mischaracterizes the underlying facts. The Defendant made numerous misrepresentations to Ms. Griffin, which enticed Ms. Griffin to loan the Defendant a substantial amount of money, including: (1) that the Defendant would beat the interest rate Ms. Griffin was receiving on her retirement fund and would pay $5,000.00 per year in interest on the loan; (2) that the Defendant would repay the loan with interest upon the sale and/or renting of the residence; and (3) that the Defendant would prepare and execute a written instrument of the agreement. Notably, none of these misrepresentations is a statement regarding the Defendant's financial condition, which she aptly observes is excluded from the standard set forth in Section 523(a)(2)(A). Therefore, this debt falls squarely within the parameters of Section 523(a)(2)(A). *See Miller v. Cigna Ins. Co.*, 311 B.R. 57, 61 (D. Md. 2004).

### C. Count II of the Complaint Does Present a Viable Claim.

The Defendant's argument that Count II of Ms. Griffin's Complaint does not present a viable claim also lacks merit, as the Defendant repeatedly mischaracterizes the law.

#### i. Conversion is Applicable to Monetary Claims in Specific Circumstances.

The Defendant asserts that "[a]s a matter of law," a conversion action is not maintainable for monetary claims. As support for this assertion, the Defendant cites to *Roman v. Sage Title Group, LLC*, 229 Md. App. 601 (2016). However, the Defendant's assertion misstates the

Appellate Court of Maryland's holding from *Roman*, and therefore, her broad contention that a conversion action is inapplicable to money is far askew of the governing law.

In *Roman*, the Court explained that "the general rule is that monies are intangible and, therefore, not subject to a claim for conversion." 229 Md. App. at 609 (internal citations and quotation marks omitted). The Court continued in explaining that, "[a]n exception exists, however, when a plaintiff can allege that the defendant converted specific segregated or identifiable funds." *Id*. (internal citations omitted). In summarizing, the Court stated, "[i]n cases where Maryland courts have precluded claims for conversion of funds on the basis that the funds were comingled, the plaintiff either never identified a specific dollar amount that was allegedly converted, or the defendant had no obligation to return those funds in the first place." *Id*. at 611 (internal citations omitted).

Accordingly, to successfully plead a claim of conversion of money, the plaintiff must allege that a specific dollar amount was converted and/or the defendant had an obligation to return those funds to the plaintiff. *Roman*, 229 Md. App. at 611. Here, Ms. Griffin satisfied both of these requirements, as the Complaint establishes that the Defendant converted $116,000 of Ms. Griffin's money for the Defendant's own personal use, and that the Defendant had an obligation to return these funds plus interest upon the sale and/or rental of the residence. *See* Compl. ¶¶ 19, 25, 27-28, 30-31, 36.

Further, the Defendant's argument that because Plaintiff did not allege that the putative conversion of her money resulted in physical injury, Ms. Griffin's claim is barred by the economic loss rule is unfounded. Put simply, the economic loss rule has no relevance to this case. The Defendant correctly notes that "[t]he economic loss doctrine prohibits a plaintiff ***from recovering in tort*** for purely economic losses[.]" *Pac. Indem. Co. v. Whaley*, 572 F. Supp. 2d 626, 628 (D.

Md. 2008) (emphasis added). However, this is not a tort action—this is an action for determination of excepting the debt owed to Ms. Griffin from discharge, which sounds in the tenants of bankruptcy law, not tort law. Whether Ms. Griffin suffered "clear danger of physical injury or death" has no bearing on the viability of her Complaint. *Id*.

    ii.    <u>The Complaint Sufficiently Alleges a Willful and Malicious Injury</u>.

The Defendant's assertion that Ms. Griffin does not allege a willful and malicious injury is again based in a misinterpretation of the pleading standard and overlooks the factual allegations set forth in the Complaint. As discussed *supra*, Rule 8 requires that a pleading contain a short and plain statement of the claim, and that each averment be simple, concise, and direct. *See Noel v. Paccar Fin. Corp.*, 568 F. Supp. 3d 558, 565 (D. Md. 2021).

To prevail under Section 523(a)(6), "a plaintiff must prove that (1) there was an injury to the plaintiff or his property, (2) such an injury was the result of an act of the debtor, and (3) the act was both willful and malicious." *Isaacson v. Isaacson*, 478 B.R. 763, 781 (E.D. Va. Bankr. 2021). Further, "[a] debt arising from the unlawful conversion of the property of another is not specifically stated in Section 523(a)(6). However, the legislative history indicates that willful and malicious injury covers a willful and malicious conversion." *In re Tester*, 62 B.R. 486, 493 (W.D. Va. Bankr. 1986). The Defendant correctly observes that "[a] malicious injury involves (1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse." *In re Holland*, 2013 Bankr. LEXIS 2065 at *13 (Bankr. D. D.C. 2013) (quoting *In re Jercich*, 238 F.3d 1202, 1209 (9th Cir. 2001)) (internal quotations omitted).

Accordingly, for Ms. Griffin to successfully plead a claim under Section 523(a)(6), the Complaint must allege (1) an injury to herself or her property, (2) such an injury was the result of the Defendant's actions, and (3) the Defendant's actions were both willful and malicious. The

6087412.1

Defendant only takes issue with Ms. Griffin's assertion that the Defendant's actions were both willful and malicious, arguing that it is unclear from the Complaint what "wrongful act" is alleged, that the Complaint does not sufficiently allege intentionality, and that the Complaint does not set forth how the alleged actions "necessarily caused injury."

First, the Complaint repeatedly identifies the wrongful acts the Defendant committed against Ms. Griffin.  In addition to the conversion of Ms. Griffin's $116,000, the Defendant also made numerous misrepresentations to Ms. Griffin that enticed her to provide the Defendant this substantial amount of money—namely, (1) that the Defendant would beat the interest rate Ms. Griffin was receiving on her retirement fund and would pay $5,000.00 per year in interest on the loan; (2) that the Defendant would repay the loan with interest upon the sale and/or renting of the residence; and (3) that the Defendant would prepare and execute a written instrument of the agreement.  *See* Compl. ¶¶ 19-20, 22, 24-25, 27-28, 30-31, 36, 39.  Additionally, Ms. Griffin's Complaint states that the residence the Debtor purchased with the money Ms. Grifin provided was sold in June/July 2021, and the Debtor never fulfilled her repayment obligation to Ms. Griffin.  *Id*. at ¶¶ 35-36.  As such, the Complaint clearly identifies the wrongful acts of the Defendant.

Second, the Complaint also sufficiently alleges intentionality.  In *In re Holland*, the case relied upon by the Debtor, this Court determined that the creditor did not sufficiently establish intentionality because the creditor alleged that the debtor was "grossly negligent[,]" which did not amount to willfulness.  *In re Holland*, 2013 Bankr. LEXIS 2065 at *14 (Bankr. D. D.C. 2013).  Here, the Complaint expressly alleges willfulness on behalf of the Defendant.  Paragraph Forty-Nine of the Complaint states, "Defendant-Debtor Rita Browner ***willfully and maliciously*** converted the payments issued by Plaintiff-Creditor Latonya Griffin for Defendant-Debtor Rita Browner's own use and benefit without permission and/or justification."  Compl. ¶ 49.  The

6087412.1

Defendant made intentional misrepresentations to Ms. Griffin in an effort to defraud Ms. Griffin of her money. There are no allegations that Defendant acted recklessly or negligently in handling Ms. Griffin's loaned money; rather, every allegation in the Complaint is that the Defendant acted with intention to defraud Ms. Griffin. Accordingly, the Complaint has sufficiently pled intentionality.

Finally, the Complaint establishes how the Defendant's actions necessarily caused her injury. The Defendant relies upon a Supreme Court precedent, which established that "debts arising from recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6)," in arguing that Ms. Griffin did "nothing to show a necessary . . . and causal connection" between the Defendant's actions and the injury Ms. Griffin sustained. *Kawaauhau v. Geiger*, 523 U.S. 57, 64 (1998). In relying on this precedent, the Defendant again misconstrues and overlooks the underlying facts of this case. Ms. Griffin does not allege that the Debtor acted recklessly or negligently with the money Ms. Griffin provided her. Rather, Ms. Griffin asserts that the Debtor accted intentionally in misrepresenting to her that the Debtor would beat the interest rate Ms. Griffin was receiving on her retirement fund and would pay $5,000.00 per year in interest on the loan, that the Defendant would repay the loan with interest upon the sale and/or renting of the residence, and that the Defendant would prepare and execute a written instrument of the agreement. After substantial pressure, Ms. Griffin relied upon the Debtor's misrepresentations in providing the Debtor with a substantial amount of money that which the Debtor then converted for her own personal use and which clearly resulted in injury to Ms. Griffin. *See* Compl. ¶¶ 35-36, 46.

**D.     The Statute of Frauds is Not Applicable to this Matter.**

The Defendants assertion that Ms. Griffin's claims run afoul of the statute of frauds is another oversight and misinterpretation of the governing law. The Defendant correctly contends that the statute of frauds expressly forbids efforts to collect on unwritten agreements with a duration in excess of one year. However, the Defendant overlooks that "courts have strictly applied the 'one year' provision of the Statute of Frauds, whereby the statute will not apply where the contract can, by any possibility, be fulfilled or completed in the space of a year." *Pitman v. Aran*, 935 F. Supp. 637, 648 (D. Md. 1996). Put differently, "a contract to serve for an indefinite period, subject to be put an end to at any time upon reasonable notice, is not within the statute though it may extend beyond the year." *Griffith v. One Inv. Plaza Assocs.*, 62 Md. App. 1, 5 (1985) (quoting *Ellicott v. Peterson*, 4 Md. 476, 488 (1853)) (internal quotation marks omitted).

Here, Ms. Griffin agreed to provide the Defendant with money for her to purchase the Property, and the Defendant agreed to repay the loan with interest upon the sale and/or renting of the residence. Compl. ¶ 20. There is nothing in the terms of this agreement that prohibited the contract of being fulfilled or completed within one year. Stated differently, it was certainly possible for the Defendant to sell or rent the residence she purchased with Ms. Griffin's money within one year and satisfy her repayment obligations to Ms. Griffin. Because there is no allegation or stipulation to the effect that Ms. Griffin and the Defendant agreed that performance of this contract was not to be accomplished within one year, the statute of frauds does not bar the parties' oral agreement. *See Griffith*, 62 Md. App. at 5–9 (holding that the statute of frauds did not bar the parties' oral agreement where there was no evidence that the parties agreed that the performance of the contract was not to be accomplished in a year or that the parties could not have performed within one year). For these reasons, the statute of frauds is inapplicable to this matter.

### E.     Unclean Hands.

In the Motion, the Debtor asserts that the doctrine of unclean hands bars this non-dischargeability action against her.[4] The Debtor's claim of unclean hands is based on Ms. Griffin's alleged violation of the automatic stay. As discussed below, however, even if the Debtor is correct and a stay violation did occur, which Ms. Griffin does not concede, the assertion of unclean hands as a bar to this adversary proceeding is misplaced.

In asserting the doctrine of unclean hands, the Debtor relies principally on the unpublished opinion in *Overland Direct, Inc. v. Aframian,* 2023 WL 2401768 (C.D. Ca. 2023) and the Ninth Circuit decision in *Northbay Wellness Grp., Inc. v. Beyries,* 789 F.3d 956 (9th Cir. 2015). At the very outset, it should be noted that ***none*** of the cases cited by the Debtor actually hold that a stay violation is a bar to the prosecution of a non-dischargeablity action under the doctrine of unclean hands. In fact, the *Northbay* case cited by the Debtor does not involve a stay violation and the court in that case actually denied the defense of unclean hands-on grounds that are applicable here and explained below.

In relying on *Northbay and Overland,* the Debtor, with little substantive analysis, makes a huge jump in logic when she asserts that because *Northbay* states that a plaintiff deemed to have unclean hands cannot obtain a judgment of non-dischargeability, and *Overland **generally*** states that a stay violation ***may*** implicate unclean hands, the alleged stay violation by Ms. Griffin bars her from prosecuting this adversary under the doctrine of unclean hands. As discussed below, the Debtor's arguments in this regard completely ignore the critical considerations that must be analyzed before the doctrine of unclean hands can be applied. As a result, the Debtor's arguments in this regard must be denied.

---

[4] Given the allegations in the Complaint, the irony is not lost on Ms. Griffin that it is the Debtor asserting someone else has unclean hands.

Most relevant to this matter is the *Northbay* decision cited by the Debtor in which the Court denied the use of the doctrine of unclean hands because the debtor's wrongdoing outweighed the creditors wrongdoing in both the harm caused to each other and the harm caused to the public. *Northbay,* 789 F.3d at 960. In relying on controlling Supreme Court precedent, the *Northbay* Court explained that the doctrine of unclean hands does not mean that a court must always permit a defendant wrongdoer to retain the profits of his wrongdoing merely because the plaintiff is possibly guilty of transgressing the law ***in the transactions involved***. *Northbay,* 789 F.3d at 960; *Johnson v. Yellow Cab Transit Co.*, 321 U.S. 383, 387 (1944). Rather, the determination of whether the doctrine of unclean hands precludes relief requires a balancing of the alleged wrongdoing of the plaintiff against that of the defendant, and the maxim that he who comes into equity must come with clean hands is not applied by way of punishment for an unclean litigant, but "upon considerations that make for the advancement of right and justice." *Keystone Driller Co. v. General Excavator Co.,* 290 U. S. 240 (1933). *See also Northbay,* 789 F.3d at 960. The doctrine is not a rigid formula which "trammels the free and just exercise of discretion" and it should not be "stringently applied when it would disturb a substantial public interest." *Keystone Driller,* 290 U.S. 245-246; *Northbay,* 789 F.3d at 960 (citations omitted).

In the present matter, allowing the Debtor to utilize bankruptcy to avoid her responsibility for misappropriating Ms. Griffin's money would undermine the public interest in ensuring that the bankruptcy process is available only for the honest debtor. *See Local Loan Co. v. Hunt,* 292 U.S. 234, 244 (1934) (bankruptcy gives the honest but unfortunate debtor…a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt); *Grogan v. Garner,* 498 U. S. 279, 286, 287 (1991) (same). Furthermore, extending the doctrine of unclean hands to the circumstances present here would not only allow the dishonest

6087412.1

debtor to discharge debts arising from theft and fraud, but it could also prohibit an injured party from suing the perpetrator for non-dischargeable conduct.

In yet another case cited by the Debtor, which case establishes principles as equally as important as those enunciated in *Northbay* and *Yellow Cab,* the court denied the use of the unclean hands doctrine because controlling Supreme Court precedent requires that the doctrine only be allowed when there is ***a close nexus*** between a party's unethical conduct and the transactions on which that party seeks relief.  *See In re Uwimana,* 274 F.3d 806, 810 (4th Cir. 2001) ("We are not open to arguments about a party's general moral fitness, but only apply the unclean hands doctrine to prevent a party from using the courts to reap the benefits of wrongdoing.").  *See also Keystone Driller,* 290 U.S. at 245 (the predicate act underlying an unclean hands defense must have an "immediate and necessary relation to the equity that [one] seeks in respect of the matter in litigation"); *Ellenburg v. Brockway, Inc.,* 763 F.2d 1091, 1097 (9th Cir.1985) (unclean hands requires that a plaintiff "shall have acted fairly and without fraud or deceit ***as to the controversy in issue***."); *Wetzler v. Cantor,* 202 B.R. 573 (D. Md. 1996) (noting that even truthful allegations of self-dealing do not warrant application of "unclean hands" doctrine if the self-dealing was not "connected with the transaction upon which the claimant s[ought] relief").

Here, the alleged stay violation has no connection or nexus to the transgressions alleged in the Complaint.  Specifically, the Complaint asserts non-dischargeability causes of action based on a factual predicate whereby the Debtor is alleged to have defrauded Ms. Griffin out of money (the "Transactions").  On the other hand, the alleged stay violation, which took place long after the Transactions occurred, is wholly unrelated to, and independent of, the Transactions alleged in the

Complaint.[5]  Thus, under the precedent of *Keystone Driller* and *Uwimana*, the required link between the Transactions and the alleged stay violation clearly does not exist and the Debtor's assertion of unclean hands misses the mark.

F.  <u>**Leave to Amend.**</u>

A party may amend its pleading once as a matter of right before a responsive pleading has been served, otherwise by leave of the court, and such "***leave shall be freely given when justice so requires.***" Fed. R. Civ.P. 15(a).  *See also Galustian v. Peter*, 591 F.3d 724, 729 (4th Cir. 2010) (it is our "policy to liberally allow amendment in keeping with the spirit of Federal Rule of Civil Procedure 15(a)"). This liberal rule gives effect to the federal policy in favor of resolving cases on their merits instead of disposing of them on technicalities*."  Laber v. Harvey*, 483 F.3d 404, 426 (4th Cir. 2006). "[W]hile the decision to grant a party leave to amend a pleading is within the discretion of the trial court, that discretion is limited by the general policy favoring the resolution of cases on the merits." *Smithfield Foods, Inc. v. United Foods & Commer. Workers Int'l Union*, 254 F.R.D. 274, 277 (E.D. Va. 2008).  "[T]he Supreme Court has long held that this liberal mandate is to be heeded[.]" *Id.* (internal citations and quotation marks omitted).

It is the usual practice upon granting a motion to dismiss to allow leave to replead. *See Ronzani v. Sanofi S.A.,* 899 F.2d 195,198 (2d Cir.1990); *Galustian*, 591 F.3d at 729; *Devaney v. Chester*, 813 F.2d 566,569 (2d Cir.1987); *Pross v. Katz,* 784 F.2d 455,459-60 (2d Cir.1986). Although leave to replead is within the discretion of the court, refusal to grant it without any justifying reason is an abuse of discretion. *See Ronzani*, 899 F.2d at 198.  Rule 15(a) should be

---

[5] If Ms. Griffin was one of the culprits involved in the scam alleged in the Complaint and then tried to bring this non-dischargeability action because of a pecuniary loss arising therefrom, the doctrine of unclean hands would seem more applicable.  *See, e.g., Northbay,* 789 F.3d at 960 (although the court ultimately held that the doctrine didn't apply based on a weighing of the parties' respective wrongdoing, it was clear that the *Northbay* Court felt that the required connection existed between the factual predicate supporting unclean hands and the transactions that supported the claims in the non-dischargeability action).

6087412.1

interpreted so that "leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile." *Laber,* 483 F.3d at 426; *United States ex rel. Carter v. Halliburton Co.,* 315 F.R.D. 56, 61 (E.D. Va. 2016) (leave to amend should only be denied in three circumstances: (1) bad faith on the part of the moving party; (2) prejudice to the opposing party; or (3) futility.).

"A common example of a prejudicial amendment is one that raises a new legal theory that would require the gathering and analysis of facts not already considered by the defendant, and is offered shortly before or during trial." *Laber,* 483 F.3d at 427 (internal citations and quotation marks omitted). "An amendment is not prejudicial, by contrast, if it merely adds an additional theory of recovery to the facts already pled and is offered before any discovery has occurred." *Id.* "Delay alone . . . is an insufficient reason to deny the plaintiff's motion to amend." *Id.*

Likewise, [w]here a pleading does not satisfy the heightened requirements of Rule 9(b), the court should freely grant leave to amend." *Anderson v. USAA Cas. Ins. Co.*, 221 F.R.D. 250, 253 (D.C. Dist. 2004). "Accordingly, the court should reserve dismissal with prejudice for extreme situations where the pleader has had the opportunity to cure any deficiencies but either has not or cannot do so." *Id.*

Here, Ms. Griffin asserts that the allegations contained in the Complaint "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Moreover, the allegations in the Complaint are more than sufficient to "give the [Plaintiff] fair notice of what the … claim is and the grounds upon which it rests," *Conley v. Gibson,* 355 U. S. 41, 47 (1957); *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506 (2002).

6087412.1

In the event the Court finds the Complaint to be deficient, however, Ms. Griffin should be granted leave to amend in accord with the liberal standard for repleading. The Debtor would not be unduly prejudiced by any such amendments given the circumstances presented in this case and Ms. Griffin should be given a fair chance to prosecute the Complaint on its merits.

## CONCLUSION

For all of the foregoing reasons, the Defendant's Motion should be denied.

Dated: January 24, 2024.                                      Respectfully Submitted:

 /s/ Richard L. Costella
Richard L. Costella
Fed. Bar No.: MD14095
Tydings & Rosenberg LLP
One East Pratt Street, Suite 901
Baltimore, Maryland 21202
Tel.: 410-752-9700
Email: Rcostella@tydings.com

*Counsel to Plaintiff*

6087412.1

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 24th day of January, 2024, a copy of the foregoing *OPPOSITION* was served via the Court's ECF e-filing system on the following:

Maurice Belmont VerStandig, Esquire
The VerStandig Law Firm, LLC
1452 W. Horizon Ridge Pkwy, #665
Henderson, NV 89012
Email: mac@mbvesq.com


   /s/ Richard L. Costella
Richard L. Costella