Maurice B. VerStandig, Esq.
Bar No. MD18071
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854
Phone: (301) 444-4600
Facsimile: (301) 444-4600
mac@mbvesq.com
*Counsel for Rita Browner*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re: | ) | Case No. 23-87-ELG |
| | ) | (Chapter 7) |
| RITA BROWNER | ) | |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| LATONYA GRIFFIN, | ) | |
| | ) | Adv. Case No. 23-10015-ELG |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| RITA BROWNER, | ) | |
| | ) | |
| Defendant. | ) | |

## **MOTION TO DISMISS**

Comes now Rita Browner ("Ms. Browner," the "Defendant," or the "Debtor"), by and through undersigned counsel, pursuant to Federal Rule of Bankruptcy Procedure 7012 and Federal Rule of Civil Procedure 12, and moves this Honorable Court to dismiss Latonya Griffin's First Amended Complaint for a Determination Excepting Debt from Discharge (the "Complaint," as found at DE #24) filed by Latonya Griffin ("Ms. Griffin" or the "Plaintiff") and in support thereof states as follows:

1

I.   **Introduction**

In the byzantine and oft-harsh universe of regulations surrounding the licensure of contractors in the District of Columbia may be found a particularly notorious provision demanding unlicensed contractors disgorge all monies received from consumers, without any claim for setoff. A long-simmering frustration of the contracting (and insolvency) communities, this oddity was confronted by this Honorable Court in 2011, in the case of *In re Carpenter*, 453 B.R. 1 (Bankr. D.D.C. 2011), before later furnishing the foundation of a still-pending (and quasi-notorious) jurisdictional dispute in *Kiviti v. Bhatt*, 80 F. 4th 520 (4th Cir. 2023), *cert. pending* 23-729 (S. Ct. 2023).

None of which has the slightest iota of relevance to this case, a controversy wholly devoid of claims related to the work of unlicensed contractors, except that *Carpenter* remains this Honorable Court's hallmark holding on the necessity of allegedly-fraudulent assertions being the proximate causation of nondischargeable economic loss. In *Carpenter*, the absence of any correlation between skill and licensure invited a holding that Washingtonians cannot, as a matter of law, reasonably rely on whether or not a contractor is licensed. The same holds true here: while Ms. Browner is alleged to have made various false and misleading statements to the Plaintiff, none of the subject assertions are suggested to be the proximate cause of the resulting monetary loss. Even if, *arguendo*, Ms. Browner did mislead the Plaintiff about Ms. Browner's experience, whilst allegedly concealing a criminal history and generalized comingling tendencies, none of those utterances or omissions correlate to the loss claimed by the Plaintiff *sub judice*. The loss in this case, rather, is one born solely of a failure to repay monies pursuant to an oral loan agreement. This is a classic exemplar of a dischargeable debt, and none of the vibrant allegations concerning Ms. Browner's history change this core reality.

For this reason, the Complaint merits dismissal. So, too, is dismissal warranted for the more mundane reason that no willful and malicious injury may be found within the four corners of the amended pleading.

**II.     Standard**

Familiarly, "[t]o survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Justice*, 436 F. Supp. 3d 354, 357–58 (D.D.C. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))). "A claim is facially plausible when the pleaded factual content 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Citizens for Responsibility & Ethics in Washington*, 436 F. Supp. 3d at 357–58 (quoting *Iqbal*, 556 U.S. at 678). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

Indeed, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 545 (quoting Fed. R. Civ. P. 8(a)(2); *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

In evaluating a motion to dismiss, "the court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the court accept plaintiff's legal conclusions." *Citizens for Responsibility & Ethics in Washington*, 436 F. Supp. 3d at 357–58 (citing *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994); *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002)).

3

The heightened pleading standards of Federal Rule of Civil Procedure 9(b) are, too, applicable to cases such as this. In particular, "Rule 9(b)'s heightened pleading standard is applicable to claims brought under § 523(a)(2)(A). . ." *In re Aikin*, 2007 WL 3305364, at *2 (Bankr. D.D.C. 2007). *See also*, *In re Casali*, 517 B.R. 835, 841 (Bankr. N.D. Ill. 2014) ("The particularity requirement of Rule 9(b) applies equally to all claims based upon an underlying fraud, including fraud claims under § 523(a)(2)(A).") (citing *In re Munson*, 2010 WL 3768017 (Bankr. N.D. Ill. 2010) (quoting *In re Lane*, 937 F.2d 694, 698 (1st Cir. 1991))).

Where, as here, a pleading sounds in fraud or intentional misrepresentation, a heightened pleading standard is imposed whereby "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Specifically:

> Rule 9(b) requires that the pleader provide the "who, what, when, where, and how" with respect to the circumstances of the fraud. Following the same line of reasoning, a pleading subject to Rule 9(b) scrutiny may not rest on information and belief, but must include an allegation that the necessary information lies within the opponent's control, accompanied by a statement of the facts on which the pleader bases his claim.

*Anderson v. USAA Cas. Ins. Co.*, 221 F.R.D. 250, 253 (D.D.C. 2004) (quoting *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990), cert. den'd, 498 U.S. 941 (1990); citing *Kowal*, 16 F.3d at 1279 n. 3).

### III.   The Plaintiff's Allegations

The allegations of the Complaint—accepted as true for the sole and limited purpose of this motion—pertinently set forth the following:

1. Ms. Browner and the Plaintiff met in April 2015, at which time Ms. Browner indicated that she and her husband had experience in the home improvement industry. Complaint, DE #24, at ¶¶ 14-15.

2.  Ms. Browner did not then disclose issues with the completion of other projects, nor a tendency to comingle monies and materials between projects. *Id.* at ¶ 16.

3.  Ms. Browner approached the Plaintiff in 2016 with a business proposition, to which the Plaintiff demurred; Ms. Browner persisted, suggesting the project could prove mutually beneficially and offer a preferred rate of economic return. *Id.* at ¶¶ 17-20.

4.  Ms. Browner indicated the Plaintiff's investment would be utilized to acquire the property located at 4212 Wentworth Road, Baltimore, Maryland 21207 (the "Property"), with the investment thereafter repaid with interest. *Id.* at ¶¶ 12, 21.

5.  The Plaintiff agreed to make the subject loan; though she was repeatedly promised such would be memorialized in writing, no such document manifested. *Id.* at ¶¶ 22, 24.

6.  The loan was made in several tranches, commencing with $30,000.00, followed by $5,099.24, followed by $74,900.76. *Id.* at ¶¶ 25-27.

7.  The largest portion of the loan—the aforementioned $74,900.76—was wired directly to a title company, and the Property was thereafter acquired for $75,075.00. *Id.* at ¶¶ 27-28.

8.  Later, an additional $6,000.00 was loaned for construction materials, though the Plaintiff subsequently declined to loan additional monies. *Id.* at ¶¶ 31, 34-35.

9.  Ms. Browner eventually agreed to repay the loan by making monthly payments of $850.00, with one such payment being made but no other payments ensuing. *Id.* at ¶¶ 36-41.

10. The Property was then sold to RWB Property Acquisitions, LLC ("RWB") for $90,000.00 at the close of 2020; no allegations are made about the ownership of RWB and the Complaint does not suggest the entity to be an insider or affiliate of the Debtor. *Id.* at ¶ 41, *passim*.

5

11. Ms. Browner is alleged to have retained the proceeds of the sale to RWB. *Id.* at ¶ 42.

12. RWB subsequently flipped the Property for $412,500.00. *Id.* at ¶ 43.

### IV. Argument: Dismissal of Count I is Appropriate

#### a. There is an Insufficient Causal Nexus Between the Alleged Misrepresentation and the Alleged Pecuniary Loss

The Plaintiff certainly does not fail to allege that Ms. Browner is an unsavory character. Serial bankruptcy filings, a criminal conviction for loan sharking, and the operation of a fraudulent foreclosure rescue business are all vibrantly claimed, by the Plaintiff, to form a part of the Debtor's history. So, too, is Ms. Browner alleged to have misrepresented having experience in the home improvement history, whilst also apparently failing to disclose being "mired in numerous uncompleted renovation projects" and a history of using "materials and funds from one project in an attempt to complete other projects." Complaint, DE #24, at ¶¶ 15-16.[1] None of these alleged historic foibles, however, correlate to the loss claimed by the Plaintiff *sub judice*. And any damages stemming from that extant loss cannot, accordingly, give rise to a finding of non-dischargeability under Section 523(a)(2)(A) of Title 11 of the United States Code.

Familiarly, Title 11 of the United States Code (the "Bankruptcy Code") provides various exceptions to a debtor's discharge, including, ". . . any debt . . . for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by— (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition. . ." 11 U.S.C. § 523(a).

---

[1] While not relevant to the case at bar for the reasons set forth *passim*, there is an innate tension in these allegations. On one hand, the Plaintiff alleges that Ms. Browner lied about having experience in the home renovation business. On the other hand, the Plaintiff alleges Ms. Browner had sufficient experience in the business to have amassed a history of uncompleted projects and comingled materials/monies. These assertions appear to be mutually exclusive.

Addressing this very provision in the prism of the District of Columbia's aforementioned noxious home contracting regulations, this Honorable Court held in *Carpenter* that "one of the elements necessary to prove that a debt is for property obtained by fraud" is "the requirement that the creditor show that the misrepresentation was the proximate cause of the creditor's losses." *In re Carpenter*, 453 B.R. at 5.

In *Carpenter*, the debtor allegedly misrepresented his licensure as a contractor in the District of Columbia. *Id.* at 2. A creditor obtained a judgment for $55,540.00, under the local regulation demanding disgorgement of all monies paid to unlicensed contractors by consumers. *Id.* When the faux contractor then sought bankruptcy relief, the creditor sued for a declaration of non-dischargeability, noting a patently fraudulent representation as to licensure had lured her into engaging the debtor's services in the first instance. *Id.*

The problem, as this Honorable Court observed in *Carpenter*, is that the District of Columbia has somehow amassed a series of regulations around the licensure of contractors, none of which actually require an individual to demonstrate any skill whatsoever as a condition precedent to becoming licensed. *Id.* at 10-11. And absurd as that reality may be, a necessary conclusion thusly followed:

> Because the regulations at issue are not designed to assure that Carpenter was competent to perform the required work, Wyatt's reliance on Carpenter's being licensed cannot be said to be the proximate cause of her loss based on any assumption by her that Carpenter's representation that he was licensed meant that he was competent to do the work.

*Id.* at 11.

Here, the Plaintiff alleges Ms. Browner concealed a history of (i) operating a fraudulent foreclosure rescue business; (ii) being convicted of criminal usury; and (iii) comingling funds and materials between and amongst projects, whilst misrepresenting (iv) her experience in the home renovation business. Yet, just as garnering a contractor's license in the District of Columbia

7

apparently has nothing to do with actually being skilled as a contractor, none of these representations inform the loss purportedly incurred by the Plaintiff.

To be sure, the Plaintiff does not allege she was swindled into paying monies to save her personal residence from foreclosure. Nor does she allege that the at-issue loan was usurious (something that would actually have benefited her as the lender, not Ms. Browner as the borrower). Nor does she allege her monies were paid over to other projects; to the contrary, the lion's share of her funds are claimed to have been directly wired to the title company handling closing.

Equally, while the Plaintiff's allegations certainly invite a perception of a home renovation project going awry, Ms. Griffin's claimed loss is not actually correlative to any purported lack of experience in the home renovation business. The Plaintiff asserts the Property was sold to RWB, apparently at a small profit, and Ms. Browner retained the proceeds in lieu of repaying the indebtedness; if true, this is a loss correlative to an election to not retire a debt—not a loss correlative to diminution in property value occasioned by a fix-and-flipper's lack of skill.

### b. Case Law Supports the Discharge of Ordinary Monetary Debts

If not proximately caused by Ms. Browner's alleged misrepresentations and omissions, the Plaintiff's loss had to be proximately caused by *something*. In this case, that nexus is evident from the Complaint: the Plaintiff lost monies loaned to Ms. Browner when Ms. Browner either was unable—or elected—to not repay those monies. This is not the basis for a denial of discharge; this is a "tale as old as time, true as it can be. . . ever just the same, ever a surprise, ever as before, and ever just as sure." Alan Menken, *Beauty and the Beast* (Walt Disney 1991).

As observed by the United States Bankruptcy Court for the Eastern District of New York, in a case involving allegations of nondischargeability:

> A bare promise to be fulfilled in the future, which is not carried out, does not render a consequent debt nondischargeable under § 523(a)(2)(A). An unfulfilled promise

8

> to perform in the future is actionable only in contract. It is insufficient under § 523(a)(2)(A) simply to show that debtor left unfulfilled a prior oral representation or promise. Were this showing sufficient, virtually every oral obligation would give rise to a nondischargeable debt under § 523(a)(2)(A).

*In re Balzano*, 127 B.R. 524, 531 (Bankr. E.D.N.Y. 1991) (citing *Schwalbe v. Gans (In re Gans)*, 75 B.R. 474, 486 (Bankr. S.D.N.Y. 1987)). *See also In re Nabong*, 614 B.R. 67, 74 (Bankr. D. Alaska 2019) (" '[F]or a representation to be actionable under § 523(a)(2)(A), it must be one of existing fact and not simply. . . a declaration of intention.' This is because '[w]ere a creditor able to successfully argue that a debt is nondischargeable simply because a debtor failed to follow through on a future promise to pay, most bankruptcy debts would never discharge. As a result, only current or past acts can form the basis of a fraud claim under § 523(a)(2)(A).' ") (quoting *Narang v. Biswas (In re Biswas)*, 2009 WL 7809011, at *5 (9th Cir. BAP Sept. 2, 2009) (citing *Smith v. Meyers (In re Schwartz & Meyers)*, 130 B.R. 416, 423 (Bankr.S.D.N.Y.1991)); *Yates v. Davis (In re Davis)*, 2013 WL 6796657, at *2 (Bankr. M.D. Ala. Dec. 23, 2013); citing *In re Balzano*, 127 B.R. at 531); *In re Osborne*, 520 B.R. 861, 871 (Bankr. D.N.M. 2014) ("A promise to repay alone is typically insufficient to support a claim under § 523(a)(2)(A).") (citing *In re Balzano*, 127 B.R. at 531); *In re Harrison*, 301 B.R. 849, 854 (Bankr. N.D. Ohio 2003) (". . . a broken promise to repay a debt, without more, will not sustain a cause of action under § 523(a)(2)(A).") (citing *Jacobs v. Ballard (In re Ballard)*, 26 B.R. 981, 985 (Bankr. D. Conn. 1983)).

To be sure, there are exceedingly narrow circumstances under which a debtor's obligations on a contractual debt may be deemed nondischargeable, but such scenarios require an exacting degree of scienter and facially conscious-shocking allegations. *See, e.g.*, *In re Swanson*, 398 B.R. 328, 338 (Bankr. N.D. Iowa 2008) (finding binge credit card charges—incurred in proximity to when a debtor consulted with bankruptcy counsel—to be nondischargeable).

Here, the Complaint alleges Ms. Browner borrowed money to purchase and improve the Property, did just that, and then failed to repay the debt. This is, through a legal lens, no different than a consumer who borrows money to purchase a home, or a single asset real estate entity that procures funds to improve an urban lot. These are the debts that form the foundation of a plurality—if not majority—of the Chapter 11 and Chapter 13 cases in this Honorable Court. The borrowing of such monies is not the rendering of "false pretenses, a false representation, or actual fraud. . .," 11 U.S.C. § 523(a)(2)(A); the borrowing of such monies is the sort of activity that rewards risk-accepting lenders with higher interest rates than are offered on government bonds.

Equally, while it does not appear the Complaint argues Ms. Browner misrepresented her financial condition, it does merit notation that such a misrepresentation would, too, not invite a finding of nondischargeability. 11 U.S.C. § 523(a)(2)(A).

It is thusly proper to dismiss Count I of the Complaint.

### V.      Count II of the Complaint Does Not Present a Viable Claim

The Plaintiff's second cause of action seeks a finding of nondischargeability on the theory that Ms. Browner owes a debt for "willful and malicious injury," pursuant to Section 523(a)(6) of the Bankruptcy Code. For the reasons discussed *supra*, the subject injury cannot be one of fraud, as there is an absence of proximate causation. So the other two theories of recovery—conversion and unjust enrichment—present the only prisms through which such a finding of nondischargeability may be found. Neither such theory, however, is compatible with the allegations of the Complaint.

#### i. The Tort of Conversion is Inapplicable to Monetary Claims

The Plaintiff's theory of conversion is fatally flawed for the simple reason that, as a matter of law, one cannot convert monies. The whole gist of the Plaintiff's allegations is that Ms. Browner

took the Plaintiff's money and did not then repay the Plaintiff in accord with promised repayment terms. But such a theory, even if true, would not create liability for the tort of conversion.

As a matter of law, "a conversion action 'is not maintainable for money unless there be an obligation on the part of the defendant to return the specific money entrusted to his care;' otherwise, there is 'only a relationship of debtor or creditor,' and a conversion action 'will not lie against the debtor.' " *Roman v. Sage Title Group, LLC*, 146 A.3d 479, 483–84 (Md. App. 2016), aff'd, 166 A.3d 1026 (Md. 2017) (quoting *Lawson v. Commonwealth Land Title Ins. Co.*, 518 A.2d 174, 177 (Md. App. 1986)). Indeed:

> ". . .[t]he general rule is that monies are intangible and, therefore, not subject to a claim for conversion." One reason for the rule is that money is often commingled: "if a defendant maintains possession of the proceeds in question, but commingles it with other monies, the cash loses its specific identity," and thus would be considered intangible property.

*Roman*, 146 A.3d at 483 (quoting *Allied Investment Corp. v. Jasen*, 731 A.2d 957, 967 (Md. 1999)). *See also Yah Kai World Wide Enterprises, Inc. v. Napper*, 195 F. Supp. 3d 287, 324 (D.D.C. 2016) ( " '[a]s a general rule, money, i.e., currency, is not subject to a claim of conversion' under Maryland law. . .") (quoting *Darcars Motors of Silver Spring, Inc. v. Borzym*, 841 A.2d 828, 834, n. 3 (Md. 2004); citing *Tillery v. Borden*, 2010 WL 3517015, at *8 (D. Md. Sept. 3, 2010)).

Here, the Plaintiff alleges that monies were loaned to pay the closing costs on the Property and, subsequently, that *de minimis* monies were loaned for the acquisition of construction materials, with Ms. Browner being orally obligated to repay the funds. This series of allegations is facially antithetical to a notion of Ms. Browner "maintain[ing] possession of the proceeds in

11

question," *Roman*, 146 A.3d at 483, and thusly incapable of inviting liability under the theory of conversion.[2]

### ii. Unjust Enrichment Cannot Support a Finding of Willful and Malicious Injury and is Not a Viable Theory of Recovery Herein

Understanding fraud and conversion to not be torts applicable to the allegations of the Complaint, a finding of nondischargeability on account of "willful and malicious injury" would necessarily require some other tortious foundation. The lone remaining theory promulgated by the pleading is one of unjust enrichment. Yet this cause of action cannot, as a matter of law, inform a claim for nondischargeability under Section 523(a)(6) of the Bankruptcy Code, nor do the allegations of the Complaint support such a theory of recovery.

As the Supreme Court has observed of the "willful and malicious injury" exception to discharge, "the (a)(6) formulation triggers in the lawyer's mind the category 'intentional torts,' as distinguished from negligent or reckless torts. Intentional torts generally require that the actor intend 'the *consequences* of an act,' not simply 'the act itself.'" *Kawaauhau v. Geiger*, 523 U.S. 57, 61–62 (1998) (quoting Restatement (Second) of Torts § 8A, Comment a, p. 15 (1964)) (emphasis in *Kawaauhau*).

---

[2] Ms. Browner assumes applicability of Maryland law since the allegations concern a loan made in Maryland, for acquisition of a Maryland property, subsequently giving rise to a state court lawsuit in Maryland. However, application of District of Columbia law would beget identical analysis. *See, e.g.*, *Campbell v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 130 F. Supp. 3d 236, 258 (D.D.C. 2015) (" 'Generally speaking, conversion applies to chattel; however, '[m]oney can be the subject of a conversion claim if the plaintiff has the right to a specific identifiable fund of money.' 'A cause of action for conversion, however, may not be maintained to enforce a mere obligation to pay money.' ") (quoting *McNamara v. Picken*, 950 F.Supp.2d 193, 194 (D.D.C. 2013) (quoting *Cannon v. Wells Fargo Bank, N.A.*, 926 F.Supp.2d 152, 176 (D.D.C. 2013)); citing *Borzym*, 841 A.2d at 833 n. 3; quoting *Curaflex Health Servs., Inc. v. Bruni*, 877 F.Supp. 30, 32 (D.D.C. 1995)).

The United States Court of Appeals for the Seventh Circuit has addressed this issue in the context of a nondischargeability claim pegged to claims of breach of contract, tortious interference, unjust enrichment, and conversion. *First Weber Group, Inc. v. Horsfall*, 738 F.3d 767, 773 (7th Cir. 2013). In assessing these theories of recovery, the appellate court held "of the four theories . . ., only the intentional torts of interference and conversion could plausibly constitute willful and malicious injury." *Id.* at 773.

Indeed, unjust enrichment is not an intentional tort. *See, e.g.*, *Miller v. Adler*, 2018 WL 3201791, at *3 (D.N.J. June 29, 2018) (noting breach of contract and unjust enrichment to not be intentional torts); *Barbagallo v. Marcum LLP*, 2012 WL 1664238, at *7 (E.D.N.Y. May 11, 2012) ("Citrin may be able to recover for any costs of defending itself against the dismissed unjust enrichment claim. Marcum's remaining claims against Citrin are intentional torts which cannot be indemnified against either by contract or common law."); *In re Checking Account Overdraft Litig.*, 2009 WL 10670154, at *3 n. 3 (S.D. Fla. Dec. 21, 2009) ("Judge Batten noted that non-intentional tort claims like unjust enrichment did not trigger a high likelihood that fees and expenses would be awarded under O.C.G.A. § 13-6-11 because the plaintiff must prove bad faith.") (citing *Honig v. Comcast of Georgia I, LLC*, 537 F. Supp. 2d 1277, 1288 (N.D. Ga. 2008)).

Indeed, unjust enrichment cannot, *per se*, offer the foundation of a nondischargeability claim under Section 523(a)(6). As the Supreme Court observes in *Kawaauhau,* "[i]ntentional torts generally require that the actor intend 'the *consequences* of an act,' not simply 'the act itself.'" *Kawaauhau*, 523 U.S. at 61–62. Yet the elements of unjust enrichment feature no such demand of consequential intention. *See Falconi-Sachs v. LPF Senate Square, LLC,* 142 A.3d 550, 556 (D.C. 2016) (setting forth the elements of unjust enrichment under District of Columbia law); *The*

*Fischer Org., Inc. v. Landry's Seafood Restaurants, Inc.*, 792 A.2d 349, 356 (Md. App. 2002) (setting forth the elements of unjust enrichment under Maryland law).

Equally, though, a claim of unjust enrichment is not viable in this case for a far more common reason: such a tort is non-cognizable where parties' relationship is contractual in nature, and the Plaintiff alleges the existence of an oral agreement *sub judice*. *See, e.g.*, *FLF, Inc. v. World Publications, Inc.*, 999 F. Supp. 640, 642 (D. Md. 1998) ("It is settled law in Maryland, and elsewhere, that a claim for unjust enrichment may not be brought where the subject matter of the claim is covered by an express contract between the parties.") (citing *MTA v. Granite Const. Co.*, 471 A.2d 1121 (Md. App. 1984); *First Nat'l Bank v. Burton, Parsons & Co.*, 470 A.2d 822 (Md. App. 1984); *Attorney Grievance Commission v. McIntire*, 405 A.2d 273 (Md. 1979)).

The Plaintiff is thusly left without a legal theory of recovery capable of underpinning a claim for willful and malicious injury. She cannot succeed on a theory of fraud where proximate causation is absent, nor can she prevail on a claim for conversion when only currency has been purportedly converted, and unjust enrichment is both incapable of satisfying the rigors of a Section 523(a)(6) claim and legally nonviable in the context of a relationship guided by an express agreement.

### VI. Conclusion

WHEREFORE, Rita Browner respectfully prays this Honorable Court (i) dismiss the Complaint; and (ii) afford such other and further relief as may be just and proper.

*[Signature on Following Page]*

|  |  |
|---|---|
|  | Respectfully submitted, |
| Dated: March 18, 2024 | By: /s/ Maurice B. VerStandig<br>Maurice B. VerStandig, Esq.<br>Bar No. MD18071<br>The VerStandig Law Firm, LLC<br>9812 Falls Road, #114-160<br>Potomac, Maryland 20854<br>Phone: (301) 444-4600<br>Facsimile: (301) 444-4600<br>mac@mbvesq.com<br>*Counsel for Rita Browner* |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 18th day of March, 2024, a copy of the foregoing was served electronically upon filing via the ECF system, with copies to all persons registered to receive notice.

/s/ Maurice B. VerStandig
Maurice B. VerStandig