Richard L. Costella
Fed. Bar No.: MD14095
Tydings & Rosenberg LLP
One East Pratt Street, Suite 901
Baltimore, Maryland 21202
Tel.: 410-752-9700
Email: Rcostella@tydings.com
*Counsel to Plaintiff*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **In re:** | * | |
| **RITA BROWNER,** | * | Case No.: 23-00087-ELG |
| Debtor. | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

| | | |
|---|---|---|
| **LATONYA GRIFFIN,** | | |
| | * | |
| Plaintiff, | | |
| | * | |
| v. | | Adv. Pro.: 23-10015-ELG |
| | * | |
| **RITA BROWNER,** | | |
| | * | |
| Defendant/Debtor. | | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

### OPPOSITION TO MOTION TO DISMISS

The Plaintiff, Latonya Griffin ("Ms. Griffin" or "Plaintiff"), by and through her undersigned counsel, Richard L. Costella and Tydings & Rosenberg LLP; hereby files this Opposition (the "Opposition") to the Motion to Dismiss (the "Motion") filed by Rita Browner (the "Debtor" or "Defendant"). In support of her Opposition, Ms. Griffin states as follows:

### INTRODUCTION

In the Motion, the Debtor argues at length that the Amended Complaint does not establish sufficient grounds for non-dischargeability, and the dispute between Ms. Griffin and the Debtor is nothing more than a plain vanilla breach of contract claim. As set forth herein, however, the

6177411.1

Debtor's contention that Ms. Griffin's claims amount to nothing more than a broken promise to repay a debt completely mischaracterizes the underlying facts.

Moreover, the Debtor is attempting to utilize the Bankruptcy Code in order to avoid the consequences of her wrongful and fraudulent conduct. Allowing her to do so, and allowing her to elude responsibility for misappropriating Ms. Griffin's Loan, would substantially undermine the public interest in ensuring that the bankruptcy process is available only for the honest debtor. *See Local Loan Co. v. Hunt,* 292 U.S. 234, 244 (1934) (bankruptcy gives the honest but unfortunate debtor…a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt); *Grogan v. Garner,* 498 U. S. 279, 286, 287 (1991) (same).

## FACTUAL BACKGROUND

**A.    The Parties.**

The Debtor filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code on March 29, 2023 (the "Petition Date"). The Debtor can best be described as a serial bankruptcy filer having filed at ***least*** five (5) prior bankruptcy cases. *See* Main Case Docket. The Debtor is also no stranger to real estate-based scams as she has previously been convicted of loan sharking charges related to a fraudulent foreclosure rescue business. *See Browner v. District of Columbia*, 549 A.2d 1107 (D.C. Ct. App. 1988).

Ms. Griffin is a creditor in the bankruptcy case and the Plaintiff in this adversary proceeding (the "Adversary Proceeding").

**B.    The Loan.**

As described in detail in the Amended Complaint (as defined below), in April and June of 2016, Ms. Griffin provided the Debtor, who she considered a friend, with the $116,000 loan that

6177411.1

is the subject of this adversary proceeding (the "Loan").  Am. Compl. at ¶¶ 25-28, 31-32, 49.  The Loan provided to the Debtor was purported to be an investment in the Debtor's business of renovating, renting/selling real estate.[1]  Am. Compl. at ¶¶ 12(a)-(c), 15, 17-18.

More specifically, the Loan provided to the Debtor was utilized to purchase the real property better known as 4212 Wentworth Road, Baltimore, MD 21215 (the "Property"). Am. Compl. at ¶¶ 12(b), 25-28.  The Debtor made numerous false representations to Ms. Griffin in conjunction with the Loan and the Property, including but not limited to inducing Ms. Griffin into making the Loan by promising to repay the Loan upon the sale or rental of the Property, and guaranteeing a rate of return in excess of that being earned on Ms. Griffin's retirement account. Am. Compl. at ¶¶ 12(a)-(c), 15, 19-21, 44, 50-51.  The Debtor also made numerous promises to memorialize the Loan in a written loan document and make monthly payments of $850.00.  Am. Compl. at ¶¶ 23-24, 44, 52-53.

The Debtor never intended to, and in fact never did, fulfill the numerous promises made to Ms. Griffin.  Instead, the Debtor continued to string Ms. Griffin along with unfulfilled promises, and when the Property was ultimately sold, the Debtor absconded with the proceeds from the sale instead of paying back the Loan.[2] Am. Compl. at ¶ 42.

---

[1] Ms. Griffin initially balked at providing money to the Debtor for use in her business, but the Debtor continued to approach Ms. Griffin with various proposals and Ms. Griffin, believing the Debtor to be a friend, ultimately succumbed to the Debtor's advances.

[2] There is no dispute that the Loan provided by Ms. Griffin was utilized to purchase the Property and the Debtor sold the Property without remitting the sale proceeds to Ms. Griffin.  What is not known, however, are the circumstances surrounding the Debtor's sale of the Property, such as: (i) why was the Property sold for $100,000 in December 2020 and then re-sold for over $400,000 only eight (8) months later, (ii) why were the sale proceeds from the Property not transmitted to Ms. Griffin, and (iii) what was the ultimate disposition of the sale proceeds from the Property.  The answers to these questions are only known by the Debtor and all need to be investigated through the discovery process.

6177411.1

C. **The Adversary Proceeding.**

Ms. Griffin initiated this Adversary Proceeding by filing her Complaint For A Determination Excepting Debt from Discharge (the "Complaint") on July 3, 2023. The Complaint sought to have the Loan deemed non-dischargeable pursuant to sections 523(a)(2) and (a)(6) of the Bankruptcy Code.

On January 1, 2024, the Debtor moved for judgment on the pleadings under Fed. R. Civ. P 12(c) (the "Motion for Judgment").

The Court held a hearing on the Motion for Judgment on January 31, 2024. By Order entered February 20, 2024, the Court denied the Motion for Judgment while also ordering Ms. Griffin to file an amended complaint by March 1, 2024.

Ms. Griffin filed her amended complaint on March 1, 2024 (the "Amended Complaint"), and the Debtor has now moved to dismiss the Amended Complaint pursuant to Fed. R. Civ. P 12(b).

## ARGUMENT

A. **The Legal Standard**

When a court considers a motion to dismiss under Rule 12(b)(6), the Court "must accept the nonmovant's allegations as true and should view the facts in the light most favorable to the nonmovant." *Harrison v. Westinghouse Savannah River Co.,* 176 F.3d 776, 783 (4th Cir. 1999); *Sher v. JPMorgan Chase Funding (In re TMST, Inc.)*, 610 B.R. 807 (Bankr. D. Md. 2019). In order to defeat a motion to dismiss under Rule 12(b), a claim "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When assessing plausibility, well-pleaded factual allegations must be accepted as true and such facts and

all reasonable inferences derived from those allegations must be viewed in the light most favorable to the plaintiff. *See Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). Plausibility is established when the claim's factual allegations give rise to an inference of liability sufficient to move the claims "across the line from conceivable to plausible." *Iqbal*, 556 U.S. at 678; *In re TMST*, 610 B.R. at 823.

Plausibility does not impose a probability requirement at the pleading stage; ***it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence supporting the allegations in the Complaint.*** *Iqbal*, 556 U.S. at 678 (emphasis added); *Bell Atlantic Corp. v. Twombly*, 550 US 544 (2007). In other words, it need not appear from the claim that the plaintiff's claims are likely to succeed, and even though "the factual allegations in a complaint must make entitlement to relief plausible and not merely possible, what Rule 12(b)(6) does not countenance are dismissals based on a judge's disbelief of a complaint's factual allegations." *McLean v. United States*, 566 F.3d 391, 399 (4th Cir. 2009) (citing *Neitzke v. Williams*, 490 U.S. 319, 327 (1989); *Advanced Health-Care Services, Inc. v. Radford Community Hospital,* 910 F.2d 139, 145 n.8 (4th Cir. 1990) (complaint should not be dismissed 'merely because the court doubts that the plaintiff will ultimately prevail; ***so long as a plaintiff colorably states facts which, if proven, would entitle him to relief, the motion to dismiss should not be granted.)***.

**B.    Ms. Griffin's Claim Under Section 523(a)(2)(A) of the
Bankruptcy Code Establishes Fraud/Misrepresentation.**

The Debtor's contention that Plaintiff's claim under Section 523(a)(2)(A) does not establish fraud is without merit.

   i.    *The Fraud Pleading Standard and the Non-dischargeability Elements.*

"Section 532(a)(2)(A) was designed by Congress to except from discharge those obligations arising from conduct that amounts to actual fraud under the common law." *First*

6177411.1

*Deposit Nat'l Bank*, 222 B.R. 497 (Bankr. W.D. N.C. 1998). "Rule 9 of the Federal Rules of Civil Procedure, applicable to bankruptcy proceedings by Rule 7009 of the Federal Rules of Bankruptcy Procedure, requires a party to plead fraud with particularity." *In re Dunlap*, 458 B.R. 301, 341 n. 23 (E.D. Va. Bankr. 2011). "Rule 9(b) of the Federal Rules of Civil Procedure requires that all averments of fraud or mistake must state such circumstances constituting fraud or mistake with particularity. Rule 9(b), however, also provides that intent, knowledge and other conditions of the mind of a person may be averred generally." *In re Stahl*, 222 B.R. 497, 502 (Bankr. W.D. N.C. 1998).

"Rule 9(b)'s particularity requirement ensures that the opponent has notice of the claim, prevents attacks on his reputation where the claim for fraud is unsubstantiated, and protects him against a strike suit brough solely for its settlement value." *Anderson v. USAA Cas. Ins. Co.*, 221 F.R.D. 250, 253 (D.C. Dist. 2004). "Because the rule is chiefly concerned with the elements of fraud, the circumstances that the claimant must plead with particularity include matters ***such as time, place, and content of the false misrepresentations, the misrepresented fact, and what the opponent of the claimant lost as a consequence of the alleged fraud***." *Id*. (emphasis added). "That said, Rule 9(b)'s particularity requirement does not abrogate Rule 8's general requirements that a pleading contain a short and plain statement of the claim, and that each averment be simple, concise, and direct." *Id*. "Rule 9(b) ***simply requires the pleader to provide a higher degree of notice by adequately alleging all of the requisite elements for the cause of action invoked.***" *Id*. (emphasis added)**.**

Here, the Amended Complaint clearly establishes the ***timing and content*** of the Defendant's false representations, ***as well as the actual facts misrepresented***, in accordance with Rule 9(b)'s particularity requirement. More particularly, the Amended Complaint clearly states

that in the Spring of 2016, the Defendant approached Ms. Griffin with a purported business proposition and communicated directly to Ms. Griffin that: (i) the Debtor and her husband had extensive experience in the home improvement/rehabilitation industry[3], (ii) if she provided the Defendant with money to purchase a property, the Defendant would beat the interest rate Ms. Griffin was receiving on her retirement fund, and the Defendant would repay Ms. Griffin upon the sale and/or rental of the residence. Am. Compl. at ¶¶ 12(a)-(c), 20-21, 44. Up until the time the Property was sold, the Defendant continued to make misrepresentations regarding the repayment of the Loan.[4]  Am. Compl. at ¶¶ 36, 39-40, 44.

The Amended Complaint also identifies what Ms. Griffin "lost as a consequence of the alleged fraud[,]" namely, Ms. Griffin's payments totaling $116,000 to the Debtor. Am. Compl. at ¶¶ 25-27, 31-32, 58. As such, the Complaint clearly establishes the timing and content of the false misrepresentations, the misrepresented facts, and what Ms. Griffin lost as a consequence of the Defendant's fraud, satisfying the rigors set forth by the *Anderson* Court.

    ii.    <u>The Allegations Establish More Than a Breach of Contract.</u>

The Debtor's repeated contentions that Ms. Griffin's claim amounts to nothing more than a broken promise to repay a debt mischaracterizes the allegations and underlying facts set forth in

---

[3] In In footnote 1 to the Motion, the Debtor asserts that Ms. Griffin's allegations on this point are somehow inconsistent because on one hand she alleges that the Debtor misrepresented her experience in the industry, but on the other hand Ms. Griffin alleges that the Debtor has amassed a history of uncompleted projects and commingling of materials from various projects.  Ms. Griffin is almost at a loss on how to respond to this comment as Ms. Griffin views this statement in footnote 1 as further support that the Debtor lied about her experience in the industry; *i.e.,* doesn't the fact that the Debtor had several failed projects support the conclusion that she had no business being in the industry and made these statements about her experience in order to present her abilities in a false light and induce Ms. Griffin to make the Loan?  It should also be noted that in footnote 1 the Debtor starts off by saying the apparent inconsistent statements are not relevant, but proceeds to discuss the issue anyhow.

[4] As further evidence of the Defendant's ill intent in absconding with the sale proceeds from the Property, it is notable that the Debtor never actually informed Ms. Griffin that the Property had been sold.

Document      Page 8 of 17

the Amended Complaint (and also delves into inappropriate factual argument).[5] In that respect, the Amended Complaint clearly identifies that the Defendant made numerous misrepresentations to Ms. Griffin that enticed Ms. Griffin to loan the Defendant a substantial amount of money, including but not limited to: (i) the Defendant misrepresenting her experience in the home improvement industry and her ability to rehab the Property; (ii) that she would beat the interest rate Ms. Griffin was receiving on her retirement fund and would pay $5,000.00 per year in interest on the loan; (iii) that the Defendant would repay the Loan with interest upon the sale and/or rental of the Property; (iv) that the Defendant would make monthly payments to payoff the Loan; and (v) that the Defendant would prepare and execute a written instrument of the agreement. All of these allegations, taken as true, are more than sufficient to establish that the Debtor engaged in a series of misrepresentations (and on ongoing scheme) to procure the Loan and avoid repayment thereof. For these reasons, the Loan falls squarely within the non-dischargeability provision of section 523(a)(2)(A). *See Miller v. Cigna Ins. Co.*, 311 B.R. 57, 61 (D. Md. 2004).

    iii.    <u>*Causation and the Carpenter Case.*</u>

Although far from a model of clarity, it appears that in the Introduction and Section IV(a) of the Motion, the Defendant is asserting that this Court's decision in *In re Carpenter,* 453 B.R. 1 (Bankr. D.D.C. 2011) leads to the conclusion that the Amended Complaint does not sufficiently plead causation. The Debtor's reliance on *Carpenter*, and the causation arguments that follow, are, for several reasons, completely and wholly inapplicable to the present case.

First, the *Carpenter* case involves a statute regarding the licensing of contractors that operate in Washington D.C. As admitted by the Debtor, this matter is controlled by Maryland law

---

[5] Although the Motion substantially reduces the use of flowery language and Latin phraseology when compared to the Motion for Judgment, the Debtor actually cites to *Beauty and the Beast* in support of its argument that Ms. Griffin's claim is nothing more than a breach of contract claim.

6177411.1

and therefore the statute at issue in *Carpenter* is irrelevant to this matter. *See* Motion at footnote 2.

Moreover, the Debtor stretches the bounds of logic when she ***appears*** to analogize *Carpenter* to the misrepresentations made by the Debtor with respect to her experience and abilities in home improvements. In that respect, the Debtor ***seems*** to argue that *Carpenter* dictates that Ms. Griffin could not rely on the Debtor's misrepresentations regarding her home improvement experience. The difference between this case and *Carpenter*, however, is that Ms. Griffin did not rely on any representations that Ms. Browner was a licensed contractor. Instead, what occurred here was that the Debtor made express misrepresentations that she was experienced and had the requisite ability to properly rehab the Property. Whether she reasonably relied on those assertions is a factual matter that remains to be determined in this matter—and, to suggest that *Carpenter* prescribes otherwise is ludicrous.

The Motion further stretches the bounds of logic when the Debtor asserts that even if it is assumed that she made certain misrepresentations regarding her experience and abilities, such misrepresentations are not sufficient to "suggest" that they resulted in Ms. Griffin's monetary losses. Not only does this argument meander into inappropriate factual arguments, but it also belies the plain statement of facts and allegations set forth in the Amended Complaint. More specifically, the Amended Complaint expressly makes the connection between the misrepresentations that induced Ms. Griffin into making the Loan, and the ultimate monetary loss suffered by Ms. Griffin. To assert anything to the contrary is nonsensical and ignores the well-pleaded allegations contained in the Amended Complaint.

C.  **Count II of the Complaint Presents a Viable Claim.**

The Defendant's argument that Count II of Ms. Griffin's Amended Complaint does not present a viable claim for willful and malicious injury lacks merit as the Defendant ignores the well-established elements that are necessary for asserting a non-dischargeability claim under 523(a)(6). The Defendant's second argument in support of dismissing Count II is similarly without merit as the Motion mischaracterizes the controlling law with respect to conversion.

i.  *The Amended Complaint Sufficiently Alleges a Willful and Malicious Injury.*

As discussed above, Rule 7008 requires that a pleading contain a short and plain statement of the claim, and that each averment be simple, concise, and direct. *See Noel v. Paccar Fin. Corp.*, 568 F. Supp. 3d 558, 565 (D. Md. 2021). With respect to a claim under section 523(a)(6), "a plaintiff must prove that (1) there was an injury to the plaintiff or his property, (2) such an injury was the result of an act of the debtor, and (3) the act was both willful and malicious." *Isaacson v. Isaacson*, 478 B.R. 763, 781 (E.D. Va. Bankr. 2021). Stated another way, "[a] malicious injury involves: (1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse." *In re Holland,* 2013 Bankr. LEXIS 2065 at *13 (Bankr. D. D.C. 2013) (quoting *In re Jercich,* 238 F.3d 1202, 1209 (9th Cir. 2001). Accordingly, for Ms. Griffin to successfully plead a claim under Section 523(a)(6), the Amended Complaint must allege (1) an injury to herself or her property, (2) such an injury was the result of the Defendant's actions, and (3) the Defendant's actions were both willful and malicious.[6]

First, the Amended Complaint repeatedly and specifically identifies the wrongful acts the Defendant committed against Ms. Griffin. In addition to the conversion of the money owed to Ms.

---

[6] Notably, the Defendant never discusses the elements of claim under section 523(a)(6) and instead focuses solely on the misplaced legal argument that conversion cannot lie where money is involved. This argument is easily disposed of as set forth below.

6177411.1

Griffin when the Property was sold, the Defendant also made numerous misrepresentations to Ms. Griffin that enticed her to provide the Defendant with the Loan—namely that: (i) the Debtor and her husband had extensive experience in the home improvement/rehabilitation industry and possessed the requisite skill to rehab the Property, (ii) if she provided the Defendant with money to purchase the Property, the Defendant would beat the interest rate Ms. Griffin was receiving on her retirement fund, and (iii) the Defendant would repay Ms. Griffin upon the sale and/or rental of the residence. Am. Compl. at ¶¶ 12(a)-(c), 20-21, 44. Up until the time the Property was sold, the Defendant continued to make misrepresentations regarding the repayment of the Loan—for example, in addition to promising to make monthly payments, when the Property was sold in December 2020, the Debtor did not remit the sale proceeds to Ms. Griffin, but instead absconded with said proceeds.[7] Am. Compl. at ¶¶ 39, 41-42, 44, 62-63, 62-63

Second, the Amended Complaint also sufficiently alleges intentionality. In this Court's decision in *In re Holland*, this Court determined that the creditor in that case had not sufficiently established intentionality because the creditor only alleged that the debtor was grossly negligent and this did not amount to willfulness. *In re Holland*, 2013 Bankr. LEXIS 2065 at *14 (Bankr. D. D.C. 2013). Here, however, the Amended Complaint expressly alleges willfulness on behalf of the Defendant. Specifically, the Amended Complaint states in no uncertain terms that "Defendant-Debtor Rita Browner ***willfully and maliciously*** converted the payments issued by Plaintiff-Creditor Latonya Griffin for Defendant-Debtor Rita Browner's own use and benefit without permission and/or justification." Am. Compl. ¶¶ 63. There are no allegations, as in *Holland,* that the Defendant acted recklessly or negligently with respect to the proceeds from the sale of the

---

[7] Again, the Debtor never actually informed Ms. Griffin that the Property had been sold—which is further evidence of the Defendant's ill intent in absconding with the sale proceeds from the Property.

Property. To the contrary, every allegation in the Amended Complaint points to the fact that the Defendant acted with intention to defraud Ms. Griffin into making the Loan and then converting the Loan proceeds upon the sale of the Property. Accordingly, the Amended Complaint has sufficiently pled intentionality.

Finally, the Amended Complaint establishes how the Defendant's actions necessarily caused her injury. Again, Ms. Griffin does not allege that the Debtor acted recklessly or negligently with the proceeds of the Loan. Rather, Ms. Griffin asserts that the Debtor acted intentionally in misrepresenting that she would: (i) beat the interest rate Ms. Griffin was receiving on her retirement fund, (ii) would pay $5,000.00 per year in interest on the loan, (iii) would repay the loan with interest upon the sale and/or renting of the Property, and (iv) would prepare and execute a written instrument for the Loan. After substantial pressure, Ms. Griffin relied upon the Debtor's misrepresentations in providing the Debtor with a substantial amount of money that the Debtor then converted for her own personal use when the Property was sold—all of which clearly resulted in injury to Ms. Griffin when the Debtor absconded with the Loan proceeds and did not re-pay the Loan upon sale of the Property. *See* Am. Compl. ¶¶ 41-42, 44, 62-63.

    ii.   <u>Conversion is Applicable to Monetary Claims Under Specific Circumstances</u>.

"A debt arising from the unlawful conversion of the property of another is not specifically stated in Section 523(a)(6). However, the legislative history indicates that willful and malicious

injury covers a willful and malicious conversion." *In re Tester*, 62 B.R. 486, 493 (W.D. Va. Bankr. 1986).

Here, the Defendant asserts that "[a]s a matter of law," a conversion action is not maintainable for monetary claims.[8] As support for this assertion, the Defendant relies heavily on the decision in *Roman v. Sage Title Group, LLC*, 229 Md. App. 601 (2016). However, the Defendant's assertion misstates the Appellate Court of Maryland's holding in *Roman* while also ignoring the plain language set forth therein. Thus, the Debtor's broad contention that a conversion action is inapplicable to money is far askew of the governing law.

In *Roman*, the Court explained that "the general rule is that monies are intangible and, therefore, not subject to a claim for conversion." 229 Md. App. at 609 (internal citations and quotation marks omitted). The *Roman* Court goes on to explain that "[a]n exception exists, however, when a plaintiff can allege that the defendant converted specific segregated or identifiable funds." *Id*. (internal citations omitted). In summarizing, the *Roman* Court stated, "[i]n cases where Maryland courts have precluded claims for conversion of funds on the basis that the funds were comingled, the plaintiff either never identified a specific dollar amount that was allegedly converted, or the defendant had no obligation to return those funds in the first place." *Id*. at 611 (internal citations omitted).

Accordingly, to successfully plead a claim for conversion of money, and fit within the conversion exception identified in *Roman*, Ms. Griffin must allege that a specific dollar amount was converted and the Debtor had an obligation to return those funds to Ms. Griffin. *Roman*, 229 Md. App. at 611. In that respect, Ms. Griffin satisfied both of these requirements as the Amended

---

[8] Although the Debtor asserts that Count II is not maintainable as a matter of law because a conversion action is not maintainable for monetary claims, the Motion actually evolves into factual arguments that are not only erroneous but also inappropriate at the motion to dismiss stage of a litigation. *See* Motion, pp. 11-12.

6177411.1

Complaint specifically identifies that the Defendant converted $116,000 of Ms. Griffin's money for the Defendant's own personal use, and that the Defendant had an obligation to return these funds, plus interest, upon the sale and/or rental of the residence. *See* Am. Compl. ¶¶ 25-32, 58. Accordingly, the Debtor's argument that Count II does not present a viable claim for conversion is misplaced.

D. <u>Leave to Amend.</u>

A party may amend its pleading once as a matter of right before a responsive pleading has been served, otherwise by leave of the court, and such "***leave shall be freely given when justice so requires.***" Fed. R. Civ.P. 15(a). *See also Galustian v. Peter*, 591 F.3d 724, 729 (4th Cir. 2010) (it is our "policy to liberally allow amendment in keeping with the spirit of Federal Rule of Civil Procedure 15(a)"). This liberal rule gives effect to the federal policy in favor of resolving cases on their merits instead of disposing of them on technicalities." *Laber v. Harvey*, 483 F.3d 404, 426 (4th Cir. 2006). "[W]hile the decision to grant a party leave to amend a pleading is within the discretion of the trial court, that discretion is limited by the general policy favoring the resolution of cases on the merits." *Smithfield Foods, Inc. v. United Foods & Commer. Workers Int'l Union*, 254 F.R.D. 274, 277 (E.D. Va. 2008). "[T]he Supreme Court has long held that this liberal mandate is to be heeded[.]" *Id.* (internal citations and quotation marks omitted).

It is the usual practice upon granting a motion to dismiss to allow leave to replead. *See Ronzani v. Sanofi S.A.,* 899 F.2d 195,198 (2d Cir.1990); *Galustian*, 591 F.3d at 729; *Devaney v. Chester*, 813 F.2d 566,569 (2d Cir.1987); *Pross v. Katz,* 784 F.2d 455,459-60 (2d Cir.1986). Although leave to replead is within the discretion of the court, refusal to grant it without any justifying reason is an abuse of discretion. *See Ronzani*, 899 F.2d at 198. Rule 15(a) should be interpreted so that "leave to amend a pleading should be denied only when the amendment would

6177411.1

be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile." *Laber,* 483 F.3d at 426; *United States ex rel. Carter v. Halliburton Co.,* 315 F.R.D. 56, 61 (E.D. Va. 2016) (leave to amend should only be denied in three circumstances: (1) bad faith on the part of the moving party; (2) prejudice to the opposing party; or (3) futility.).

"A common example of a prejudicial amendment is one that raises a new legal theory that would require the gathering and analysis of facts not already considered by the defendant, and is offered shortly before or during trial." *Laber,* 483 F.3d at 427 (internal citations and quotation marks omitted). "An amendment is not prejudicial, by contrast, if it merely adds an additional theory of recovery to the facts already pled and is offered before any discovery has occurred." *Id.* "Delay alone . . . is an insufficient reason to deny the plaintiff's motion to amend." *Id.*

Likewise, [w]here a pleading does not satisfy the heightened requirements of Rule 9(b), the court should freely grant leave to amend." *Anderson v. USAA Cas. Ins. Co.*, 221 F.R.D. 250, 253 (D.C. Dist. 2004). "Accordingly, the court should reserve dismissal with prejudice for extreme situations where the pleader has had the opportunity to cure any deficiencies but either has not or cannot do so." *Id.*

Here, Ms. Griffin asserts that the allegations contained in the Amended Complaint "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Moreover, the allegations in the Amended Complaint are more than sufficient to "give the [Plaintiff] fair notice of what the … claim is and the grounds upon which it rests," *Conley v. Gibson,* 355 U. S. 41, 47 (1957); *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506 (2002).

In the event the Court finds the Amended Complaint to be deficient, however, Ms. Griffin should be granted leave to amend in accord with the liberal standard for repleading. The Debtor would not be unduly prejudiced by any such amendments given the circumstances presented in this case and Ms. Griffin should be given a fair chance to prosecute the Amended Complaint on its merits.

## **CONCLUSION**

For all of the foregoing reasons, the Defendant's Motion should be denied.

Dated: June 13, 2024.                                          Respectfully Submitted:

 /s/ Richard L. Costella
Richard L. Costella
Fed. Bar No.: MD14095
Tydings & Rosenberg LLP
One East Pratt Street, Suite 901
Baltimore, Maryland 21202
Tel.: 410-752-9700
Email: Rcostella@tydings.com

*Counsel to Plaintiff*

6177411.1

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 13th day of June, 2024, a copy of the foregoing *OPPOSITION* was served via the Court's ECF e-filing system on the following:

Maurice Belmont VerStandig, Esquire
The VerStandig Law Firm, LLC
1452 W. Horizon Ridge Pkwy, #665
Henderson, NV 89012
Email: mac@mbvesq.com


  /s/ Richard L. Costella
Richard L. Costella