Maurice B. VerStandig, Esq.
Bar No. MD18071
The Belmont Firm
1050 Connecticut Avenue, NW
Suite 500
Washington, DC 20036
(202) 991-1101
mac@dcbankruptcy.com
*Counsel for the Defendant*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re: | ) | Case No. 23-00087-ELG |
| | ) | |
| RITA BROWNER | ) | |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| LATONYA GRIFFIN | ) | |
| | ) | |
| Plaintiff / Counter-Defendant, | ) | |
| | ) | |
| v. | ) | Adv. Case No. 23-10015-ELG |
| | ) | |
| RITA BROWNER | ) | |
| | ) | |
| Defendant/Counter-Plaintiff. | ) | |
| _____ | ) | |

## **ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM**

Comes now Rita Browner ("Ms. Browner," the "Defendant," or the "Debtor"), by and through undersigned counsel, pursuant to Federal Rule of Bankruptcy Procedure 7012 and Federal Rule of Civil Procedure 12, and as and for her answer to the first amended complaint (the "Complaint"), ECF No. 24, filed by Latonya Griffin ("Ms. Griffin," or the "Plaintiff"), together with her assertion of applicable affirmative defenses and statement of a counterclaim, states as follows:

1

**Answer**

1.    Admitted.

2.    Admitted.

3.    Admitted.

4.    Admitted. And, in further answer, Ms. Browner consents to entry of final orders or judgment by this Honorable Court.

5.    The Debtor is without information sufficient to admit or deny this allegation, inasmuch as she does not Plaintiff's domicile or residence. The Debtor admits, however, that Plaintiff is the holder of an unsecured claim.

6.    Admitted.

7.    Denied. In further answer, the Debtor denies that she is "best described as a serial bankruptcy filer," asserting instead that she is best described by her legal name, Rita Browner. Additionally, the Debtor denies any involvement in real estate-related financial scams and contends that it is unclear whether she was ever convicted of loan sharking.

8.    The Debtor is without information sufficient to admit or deny the allegations inasmuch as it is unclear whether the course of dealing began in April 2015.

9.    Admitted.

10.    Admitted.

11.    Denied. The Debtor denies the specific allegations of intentional misrepresentation, unjust enrichment, and civil theft/conversion as set forth in the state court lawsuit (the "State Court Suit"). The Debtor acknowledges, however, that a complaint was indeed filed in the State Court Suit and that it alleges such claims against her, though she remains skeptical of their veracity.

12.    Denied. In further answer, the Debtor denies making any false representations of material fact to induce the Plaintiff to enter into a contract to loan money. The Debtor specifically denies the allegations regarding her expertise, ability, willingness, and intent to repay the loan, as well as any misrepresentation regarding the use of the loan proceeds.

13.    Denied as to the characterization that the bankruptcy filing was intended to avoid payment of the debt owed to Ms. Griffin.

14.    The Debtor is without information sufficient to admit or deny this allegation. Given the passage of time, the Debtor is unable to accurately recall the specifics of this alleged interaction.

15.    Denied. In further answer, the Debtor denies that she falsely represented that she and her husband had expertise in the home improvement/rehabilitation industry and regularly purchased and rehabilitated properties. The Debtor contends that terms such as "expertise" and "regularly" are inherently subjective and lack clear definition, making the allegation ambiguous at best. The Debtor maintains that any statements made were truthful and consistent with their actual experience.

16.    Denied. In further answer, the Debtor denies the allegation that she failed to disclose being "mired in numerous uncompleted renovation projects" or having history of utilizing materials and funds from one project to complete others. The Debtor asserts that the characterization of her activities is both speculative and misleading, and any such allegations are grounded in subjective interpretation rather than objective facts.

17.    Admitted.

18.    Admitted.

19.    Denied. In further answer, the Debtor denies that she continued to "pressure" Plaintiff about becoming an investor despite any expressed lack of interest. The Debtor contends that the term "pressure" is inherently subjective and open to interpretation, and it unfairly characterizes what were, in fact, open and voluntary discussions. The Debtor further denies any false representation regarding the investment or its benefits, asserting that all communications were transparent and made in good faith.

20.    Denied.  In further answer, the Debtor notes that any discussions regarding potential returns were speculative in nature, common in investment scenarios, and were presented as good faith estimates, not guarantees. The Debtor maintains that the characterization of these discussions as false is both unfounded and misleading.

21.    Denied. In further answer, the Debtor asserts that all representations made regarding the use of the investment and the repayment plan were accurate, made in good faith, and fully aligned with the parties understanding at the time.

22.    Denied. In further answer, the Debtor contends that Plaintiff made her investment decision voluntarily and with full knowledge of the relevant facts. The Debtor further asserts that any discussion regarding the loan were conducted transparently and with no intent to deceive or mislead.

23.    The Debtor is without information sufficient to admit or deny the allegations in this paragraph, inasmuch as the Debtor cannot speak on Plaintiffs personal perception or beliefs. The Debtor asserts, however, that any interaction between the parties were genuine and not motivated by any intent to deceive.

24.    The Debtor is without information sufficient to admit or deny the allegations in this paragraph and, more specifically, notes that "repeatedly misrepresented" is ambiguous. The

Debtor asserts that any discussion about preparing and executing a written instrument were conducted transparently and in good faith.

25.    The Debtor is without information sufficient to admit or deny this allegation. The Specifically, Debtor does not recollect pertinent details of this transaction, and is without information as to what Plaintiff may have believed regarding the use of those funds. Debtor admits, however, the amount in the personal check

26.    The Debtor is without information sufficient to admit or deny this allegation as the Debtor does not recollect pertinent details of this transaction.

27.    The Debtor is without information sufficient to admit or deny this allegation as the Debtor does not recollect pertinent details of this transaction. The Debtor acknowledges, however, that Plaintiff initiated a wire transfer to Sandy Spring Title Company for the purchase and settlement of the Wentworth Property.

28.    Admitted.

29.    The Debtor admits that the Wentworth Property (as defined in the Complaint) was titled in the name of Jarrick Browner. However, the Debtor is without information sufficient to admit or deny the reason behind this decision.

30.    Admitted.

31.    The Debtor is without information sufficient to admit or deny the specific details surrounding the alleged transfer. The Debtor denies any suggestion of misappropriation, noting that any funds received were used in a manner consistent with the parties' agreement and the project's needs.

32.    Admitted.

33.     The Debtor is without sufficient information to admit or deny this allegation. Specifically, the Debtor finds the reference to "Ms. Browner" unclear, as the Debtor herself is Ms. Browner.

34.     The Debtor is without information sufficient to admit or deny the specific timing or content of any conversation that allegedly occurred in late 2018 regarding the financial status of the Wentworth Property renovations.

35.     The Debtor acknowledges that Plaintiff, exercising her right as an investor, chose not to advance any further funds.

36.     The Debtor is without information sufficient to admit or deny the specific timing or content of any discussion in November 2019 regarding repayment of the loan.

37.     The Debtor is without information sufficient to admit or deny the allegation. Specifically, while there is no dispute that the Debtor made a payment to the Plaintiff, it is unclear that this payment was part of a broader agreement to repay the loan in monthly installments. The Debtor asserts that the payment was made in good faith and should not be construed as an acknowledgment of any specific payment schedule or obligation beyond what was originally agreed upon.

38.     Admitted.

39.     Admitted.

40.     The Debtor is without information sufficient to admit or deny the exact timing and content of the communication.

41.     The Debtor admits that the Wentworth Property was sold to RWB Property Acquisitions, LLC. The Debtor denies, however, the characterization that the property was fully

renovated at the time of the sale and asserts that the sale price was appropriate given the property's condition and market circumstances.

42.     Denied. In further answer, the Debtor asserts that the term "conversion" is inapplicable to the circumstances described. The Debtor denies any allegation of wrongful conduct regarding the use of the sale proceeds.

43.     Admitted.

44.     Denied.

45.     Denied. In further answer, the Debtor asserts that she "never intended" to fulfill her promises is purely speculative. Any notion that the Debtor engaged in fraudulent conduct or acted with deceptive intent is purely conjectural.

46.     The Debtor is without information sufficient to admit or deny the allegations. Specifically, "fraudulently induced" is facially ambiguous. The Debtor acknowledges, however, that the loan was a result of mutual consent between informed parties.

47.     Denied.

48.     Admitted.

49.     The Debtor is without sufficient information to admit or deny the allegations of this paragraph and, more specifically, notes that "induce" is subjective and ambiguous. The Debtor denies any intent to mislead or deceive and contends that any discussions regarding business opportunities were conducted in good faith.

50.     Denied. In further answer, the Debtor asserts that any discussion regarding repayment were based on good faith estimates and were not intended to mislead or deceive.

51.     Denied. In further answer, the Debtor asserts that any discussions regarding potential returns were speculative and made in good faith, based on information at the time.

52.     The Debtor is without information sufficient to admit or deny the allegations of this paragraph. The Debtor acknowledges, however, that there was a genuine intention to formalize the agreement, and any delay in doing so was due to practical reasons, not deceit or bad faith.

53.     Denied. In further answer, the Debtor notes that any discussion regarding repayment were based on good faith intentions and were consistent with the understanding between the parties at the time.

54.     Denied. In further answer, the Debtor notes that any representation made were accurate and made in good faith, with no intent to deceive or mislead. The decision to proceed with the loan was mutually agreed upon by both parties, based on the information and understanding available at the time.

55.     Denied. In further answer, the Debtor asserts that the characterization of her intent as fraudulent is overly broad. The Debtor contends that all business decisions were made transparently and with full disclosure to all parties involved.

56.     Denied. In further answer, the Debtor asserts that all interactions and representations were made in good faith, with honesty, and with a mutual understanding of the terms. The notion that the Debtor engaged in fraudulent behaviour is speculative.

57.     The Debtor is without information sufficient to admit or deny the allegations of this paragraph.

58.     Affirmed.

59.     Denied.

**Affirmative Defenses**

60.     As and for her first affirmative defense, the Debtor asserts the Complaint fails to state a claim for which relief may be granted.

61.     As and for her second affirmative defense, the Debtor asserts relief herein is barred by the doctrine of unclean hands.

62.     As for her third affirmative defense, the Debtor asserts that the Plaintiff is estopped from asserting claims of non-dischargeability.

63.     As for her fourth affirmative defense, the Debtor asserts commercial impracticability.

64.     The Debtor reserves her right to plead such other and further affirmative defenses as may be gleaned through the discovery process and, additionally, notes that she maintains all negative defenses at law and in equity including, *inter alia*, the reality that the Plaintiffs simply cannot prove various core allegations of the Complaint because such allegations are counterfactual in nature, just as the Plaintiffs cannot establish certain core elements of the causes of action they purport to have properly pleaded.

## COUNTERCLAIM

Comes now Ms. Browner (the "Counter-Plaintiff," in addition to those defined terms set forth *supra*), by and through undersigned counsel, pursuant to Federal Rule of Bankruptcy Procedure 7013 and Federal Rule of Civil Procedure 13, and as and for its counterclaim (the "Counterclaim") against Ms. Griffin (the "Counter-Defendant," in addition to those defined terms set forth *supra*), and in support thereof state as follows:

### Parties

1.     Ms. Browner is the Debtor who filed a voluntary petition for relief under chapter 7 of title 11 of the United States Code (the "Bankruptcy Code") in this Honorable Court on March 29, 2023.

2.     Ms. Griffin is an alleged creditor in this case.

9

**General Allegations: Automatic Stay Violation**

3.      When the Debtor, Ms. Browner, sought bankruptcy relief on March 29, 2023, the Counter-Defendant was listed as a creditor holding a claim in connection with an ongoing dispute in the Circuit Court for Baltimore City, Case No. 24-C-22-004705.

4.      The Counter-Defendant was listed on the original mailing matrix in this case, on account of having been scheduled as a creditor.

5.      A Certificate of Notice was issued on March 29, 2023, notifying Counter-Defendant and her legal counsel, Anton L. Iamele, of the bankruptcy filing and the automatic stay that was immediately imposed under section 362 of title 11 of the United States Code.

6.      On March 31, 2023, the Bankruptcy Notice Center (BNC) sent, by first-class mail, the Certificate of Notice to the Counter-Defendant and her counsel, placing them on actual notice that Ms. Browner was a debtor in bankruptcy and that all collection actions and legal proceedings against her were automatically stayed.

7.      Accordingly, from March 2023 onward, Counter-Defendant was on constructive notice that Ms. Browner was a debtor in bankruptcy, with the Counter-Defendant and her counsel being on actual notice from no later than April 2023.

8.      Despite this notice, Counter-Defendant, with and through her state court counsel, continued to pursue legal action against Ms. Browner by filing a request for default on June 30, 2023, in the ongoing litigation in the State Court Suit. This action was taken with full knowledge of the pending bankruptcy, in direct violation of sections 362(a)(1) and (a)(6) of title 11 of the United States Code.

9.      The Counter-Defendant's actions were willful, as she had both actual and constructive notice of the bankruptcy filing and the automatic stay. The Counter-Defendant's

decision to proceed with legal action despite this notice demonstrates a blatant disregard for the protections afforded to the Debtor under title 11 of the United States Code (the "Bankruptcy Code").

10.     As a result of the Counter-Defendant's willful violation of the automatic stay, Ms. Browner has suffered emotional damages. The continuation of the legal actions against her has caused undue stress and anxiety, exacerbating the challenges she faced while managing her bankruptcy case.

11.     The ongoing litigation further distracted Ms. Browner from effectively managing her bankruptcy proceedings, compounding her emotional distress. The dual pressures of defending against the unlawful actions and navigating the bankruptcy process have taken a toll on her well-being.

### Count I – Violation of the Automatic Stay (11 U.S.C. § 362)

12.     Ms. Browner repeats and realleges each and every foregoing paragraph of this Complaint, as though fully set forth herein.

13.     By filing a default request against Ms. Browner on June 30, 2023, in the Circuit Court for Baltimore City, the Counter-Defendant undertook an act to continue a judicial action against the Debtor that was commenced before the bankruptcy case, in contravention of section 362(a)(1) of the Bankruptcy Code.

14.     By filing the default request against Ms. Browner, the Counter-Defendant further undertook an act to "collect, assess, or recover a claim against the Debtor that arose before the commencement of the bankruptcy case," in contravention of section 362(a)(6) of the Bankruptcy Code.

15.     The Counter-Defendant had actual and constructive notice of this bankruptcy proceeding at the time she filed the default request, as she had received the Certificate of Notice on March 31, 2023, and was represented by legal counsel throughout the proceedings.

16.     Under section 362(k) of the Bankruptcy Code, an individual injured by any willful violation of the automatic stay shall recover actual damages, including but not limited to emotional distress, legal costs, and attorney fees, together with punitive damages.

17.     As a direct result of the Counter-Defendant's willful violation of the automatic stay, the Debtor has suffered actual damages—and is entitled to punitive damages—as set forth in section 362(k) of the Bankruptcy Code.

WHEREFORE, Ms. Browner respectfully prays this Honorable Court (i) enter judgement against Counter-Defendant, and in favor of Ms. Browner, in a sum equal to the damages sustained by Ms. Browner as a result of the willful violation of section 362 of the Bankruptcy Code; (ii) award punitive damages, in the sum of $116,000.00, as and for the willful nature of the Counter-Defendant's actions in violating the automatic stay; and (iii) afford such other and further relief as may be just and proper.

Respectfully submitted,

Dated: July 26, 2026

By: /s/ Maurice B. VerStandig<br>
Maurice B. VerStandig, Esq.<br>
Bar No. MD18071<br>
The Belmont Firm<br>
1050 Connecticut Avenue, NW<br>
Suite 500<br>
Washington, DC 20036<br>
(202) 991-1101<br>
mac@dcbankruptcy.com<br>
*Counsel for the Defendant*

*[Certificate of Service on Following Page]*

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on this 26th day of July, 2026, a copy of the foregoing was

served electronically upon filing via the ECF system.

/s/ Maurice B. VerStandig
Maurice B. VerStandig
